## Chicago, Milwaukee & St. Paul Railway Company, De= fendant in Error, v. John N. Faithorn, Receiver, Plaintiff in Error.

### Gen. No. 16,260.

1. MUNICIPAL COURT—*when form of action adopted immaterial.* So far as the question of the jurisdiction of the Municipal Court and the procedure therein are concerned, it makes no difference what the form of action is, because in that court in suits of the 4th class no written pleadings are required, and if the court has jurisdiction of the parties and the subject-matter it may render such judgment as is necessary to do justice between the parties.

2. NEGLIGENCE—*when receiver liable.* The test of liability lies in the determination of the fact as to whether the receiver was actually in control.

Error to the Municipal Court of Chicago; the HON. MANCHA BRUGGE-MEYER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed February 20, 1912.

JESSE B. BARTON, for plaintiff in error.

O. W. DYNES, for defendant in error.

MR. JUSTICE CLARK delivered the opinion of the court.

The defendant in error, the Chicago, Milwaukee & St. Paul Ry. Co., hereinafter called the St. Paul Co., obtained judgment in the Municipal Court of Chicago

in the sum of $300 for damages caused by the derailment of its train through the negligence of an employe of the plaintiff in error, John N. Faithorn, as receiver of the Chicago Terminal Transfer R. R. Co.

The contention of the defendant in error is that the suit was on contract, while the plaintiff in error insists that it was purely in tort. So far as the questions of the jurisdiction of the Municipal Court and the procedure therein are concerned, it makes no difference what the form of action is, because in that court in suits of the 4th class no written pleadings are required, and if the court has jurisdiction of the parties and the subject-matter it may render such judgment as is necessary to do justice between the parties. Edgerton v. C. R. I. & P. Ry. Co., 240 Ill. 311.

The case was heard on a stipulation of facts, which included a number of contracts that will hereinafter be referred to. The St. Paul Co. was a licensee of the P. C. C. & St. L. Ry. Co., hereinafter called the Pan Handle Co. In 1885 a company to whose rights the Pan Handle Co. succeeded, made a contract with the Chicago & Great Western R. R. Co. and the Chicago & Northwestern Ry. Co., with reference to the putting in of crossings over the tracks of a road now owned by the Pan Handle Co. and that of the Chicago & Northwestern Ry. Co., and in said contract the C. & G. W. Co. agreed to pay all the cost and expense of putting in crossing frogs and crossing signals, gates, targets, watchman's house, etc., and forever maintain them. The contract specifically provided that the C. &. G. W. Co. would pay all claims and demands and save harmless the other parties to the contract, their successors or assigns, from all liability, costs or expense incident to or growing out of the construction or use of said crossings or the movements of trains over the same, that might arise in consequence of the want of care of the C. & G. W. Co., its agents or ser-

422 Appellate Courts of Illinois.

Chicago, Mil. & St. Paul R'y Co. v. Faithorn, 167 Ill. App. 420.

vants. The C. & G. W. Co. was afterwards succeeded by the C. & N. P. Ry. Co., and that in turn by the Chicago Terminal Transfer R. R. Co., hereinafter called the Terminal Co., of which the plaintiff in error was the receiver at the time of the institution of this suit.

In 1892 a contract was entered into by the C. & N. P., C. & N. W. and Pan Handle Companies, in which reference was made to the contract of 1885, and which provided for the readjustment and changes of tracks mentioned in the prior contract. By section 7 of the contract the C. & N. P. Co. agreed to pay the entire cost of the crossing frogs and to maintain them, etc., in accordance with the contract of 1885. By section 10 of the contract of 1892 it was provided that if the crossings should ever be required to be protected by interlocking devices, the C. & N. P. Co. should, at its sole cost and expense, construct the same and connect all existing tracks therewith, etc., and the C. & N. P. Co. by the said contract further "agrees that it will keep said interlocking and derailing system in repair and maintain and renew the same, or any part thereof, from time to time when necessary, and that it will pay all the cost of operating the same; all the men employed in the operation thereof shall be subject to discharge upon demand of the proper officers of said North-Western Company or said Pittsburgh Company, and the place of any man so discharged shall be immediately supplied by a competent man."

Afterwards the interlocking device was installed and paid for by the Terminal Co. or its predecessor, and the Terminal Co. at all times assumed the burden of providing towermen at its own expense, in addition to maintaining the interlocking system. This arrangement seems to have been carried out by the receiver since he came into control of the property.

The agreed statement of facts contains this paragraph:

"The evidence in the case showed that as to derailment mentioned in the statement of claim as having occurred September 27, 1908, the same was caused by the negligence of the employe of the receiver, John N. Faithorn, operating the tower of the interlocking plant by throwing a derail in front of an approaching engine pulling live stock cars belonging to the plaintiff, whereby the engine and some cars went off the tracks at the derail, and it was agreed that in that particular derailment plaintiff had suffered damages to the amount of Three Hundred Dollars."

It also contains the following admission by the plaintiff in error:

"John N. Faithorn was receiver of the Chicago Terminal Transfer R. R. Co. at the time of instituting the suit, and, as such receiver, controlled, managed and operated the railroad of said Company at the time and place of the derailment specified in the statement of claim."

The contention of the plaintiff in error is that he is not liable for the negligence of his servants in the management of the tower, because such servants were in reality operating the tower jointly for him, as receiver, and the defendant in error (the licensee of the Pan Handle Co.) and the C. &. N. W. Ry. Co.; that in effect he, as receiver, and the two railway companies were like partners in the operation of the device.

We cannot agree with this contention. We think it is conclusively shown by the agreements from which the foregoing extracts have been taken, as well as by those portions of the stipulation of facts heretofore recited, that the receiver was charged with the duty of not only maintaining the interlocking device, but of operating it. It is true the agreement provided that all the men employed in the operation thereof should be subject to discharge upon the demand of the proper officers of the other two companies, but it nowhere

424    APPELLATE COURTS OF ILLINOIS.

Chicago, Mil. & St. Paul R'y Co. v. Faithorn, 167 Ill. App. 420.

appears that either of the other two companies partici-
pated or had the right to participate in the selection
of men. Either of the other two companies could in-
sist upon the discharge of a man whom it considered
incompetent, but the duty of selecting a competent
man still rested upon the C. & N. P. Co. and also, in
our opinion, upon the plaintiff in error, as receiver of
the company taking the place of the C. & N. P. Co.
Indeed it will be noticed that in the stipulation of facts
it is admitted by the plaintiff in error that the accident
for which damages were allowed was caused by the
negligence of his employe. It is difficult to understand
how, in view of this admission, he can now properly
make the contention that the operation of the inter-
locking system was joint and that the employe was a
joint employe.

The test of liability in cases like the present lies
in the determination of the fact as to who was actually
in control, if the negligence was due to the one so ac-
tually in control, then he is the one to be held responsi-
ble for the consequence of such negligence. An agister
is liable for damages committed by cattle placed in his
control, and not the owner of the cattle. Ward v.
Brown, 64 Ill. 307; Ozburn v. Adams, 70 Ill. 291. A
principal contractor and not the owner of the building
or work under construction is responsible for injuries
to third persons caused by the negligence of himself
or his employes. Pfau v. Williamson, 63 Ill. 16; Kep-
perly v. Ramsden, 83 id. 354. An agent who assumes
entire control over certain work in which the principal
does not interfere has been held to be liable, and not
the principal. Baird v. Shipman, 132 Ill. 16.

The case of Blank v. I. C. R. R. Co., 182 Ill. 332,
has been referred to by the plaintiff in error. In the
contracts introduced in evidence now under consider-
ation there is no provision exempting the one in con-
trol of the operation of the interlocking switching and

derailing device from the negligence of its or his employes. The contracts seem to have been prepared with unusual care with respect to the protection of the rights of the parties thereto, and it would seem fair to presume they would have contained such a provision if that had been the intent of the parties. In the case last referred to there was a provision for exemption from liability for negligence.

In the view we take of the matter, it is unnecessary to discuss the question as to whether or not the rights of the defendant in error as licensee were any other or different than those of the Pan Handle Company would have been in like circumstances.

We find no error in the record, and the judgment is therefore affirmed.

*Judgment affirmed.*