LYMAN BAIRD *et al.*

*v.*

ELIAS SHIPMAN, Admr.

*Filed at Ottawa January 21, 1890.*

1. NEGLIGENCE—*personal liability of an agent.* Where an agent of a non-resident owner of a house and lot, having the same charge of the property as the owner would have had were he present, leases the same, with notice or knowledge that one of the stable doors on the premises is unsafe and in a dangerous condition, and an expressman, while engaged in delivering a load of kindling wood in the barn for one of the tenants, was killed by the falling of such door, it was *held,* that the agent was liable to the personal representative of the deceased in damages, and could not excuse himself on the plea of the liability of his principal.

2. It is not the agent's contract with his principal which exposes him to or protects him from liability to third persons, but his common law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of his agency, nor can its breach be excused by the plea that his principal is chargeable.

3. If an agent once enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons, which may be the natural consequence of his acts, and he can not abandon its execution and thereby leave things in a dangerous condition.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

The following opinion of the Appellate Court fully presents the questions arising upon this record:

GARNETT, P. J.: "This is an appeal from a judgment for damages, founded on the alleged negligence of appellants, by which the death of Joseph Garnett, appellee's intestate, is said to have been caused. The place where the injury happened was in a barn situated on premises on Michigan avenue, in Chicago, belonging to Aaron C. Goodman, who was then, and

for several years before, a resident of Hartford, Connecticut. Appellants were his agents for renting the premises during the years 1884 and 1885, and during both years were carrying on the real estate business in Chicago. On the trial, evidence was given tending to show that they had, in fact, complete control of the premises, with the residence and barn thereon, repairing the same in their discretion, and there was no proof that in such matters they received any directions from the owner. The property was rented by appellants to Emma R. Wheeler and A. R. Tillman from April 1, 1884, to April 30, 1885, and to Emma R. Wheeler from May 1, 1885, to April 30, 1886. Both leases were in writing, and by the terms of each lease the tenants covenanted to keep the premises in good repair. The tenant in the last lease rented the premises to Nellie E. Pierce, who occupied the same from April 28, to September, 1885. The evidence tends to prove that when the lease was made to Emma R. Wheeler, the large carriage-door to the barn was in a very insecure condition, and that appellants, through one Warner, the manager of their renting department, verbally agreed with Mrs. Wheeler to put the premises in thorough repair. Nothing was done to improve the condition of the door, and on June 12, 1885, while the deceased, an expressman by occupation, was engaged in delivering a load of kindling in the barn, for one of the parties living in the house, the door, weighing about four hundred pounds, fell from its fastenings, and injured him to such an extent that he died the next day.

"Appellants make two points: First, that the verdict is clearly against the weight of the evidence; second, that they were the agents of the owner, Goodman, and liable to him, only, for any negligence attributable to them.

"There is nothing more than the ordinary conflict of evidence found in such cases, presenting a question of fact for the jury, and the finding must be respected by this court in deference to the well settled rule.

"The other point is not so easily disposed of. An agent is liable to his principal only for mere breach of his contract with his principal. He must have due regard to the rights and safety of third persons. He can not, in all cases, find shelter behind his principal. If, in the course of his agency, he is entrusted with the operation of a dangerous machine, to guard himself from personal liability he must use proper care in its management and supervision, so that others in the use of ordinary care will not suffer in life, limb or property. (*Suydam* v. *Moore*, 8 Barb. 358; *Phelps* v. *Wait*, 30 N. Y. 78.) It is not his contract with the principal which exposes him to or protects him from liability to third persons, but his common law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable. *Delaney* v. *Rochereau*, 34 La. Ann. 1123.

"If the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts, and he can not, by abandoning its execution midway, and leaving things in a dangerous condition, by reason of his having so left them without proper safeguards. *Osborne* v. *Morgan*, 130 Mass. 102.

"A number of authorities charge the agent, in such cases, on the ground of misfeasance, as distinguished from non-feasance. Meechem, in his work on Agency, (sec. 572,) says: "Some confusion has crept into certain cases from failure to observe clearly the distinction between non-feasance and misfeasance. As has been seen, the agent is not liable to strangers for injuries sustained by them because he did not undertake the performance of some duty which he owed to his principal and imposed upon him by his relation, which is non-feasance. Misfeasance may involve, also, to some extent, the idea of not

doing, as, where the agent, while engaged in the performance of his undertaking, does not do something which it was his duty to do under the circumstances—does not take that precaution, does not exercise that care, which a due regard for the rights of others requires. All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual, in common with all other members of society. It is the same not doing which constitutes actionable negligence in any relation.' To the same effect are *Lottman* v. *Barnett*, 62 Mo. 159, *Martin* v. *Benoist*, 20 Mo. App. 263, *Harriman* v. *Stowe*, 57 Mo. 93, and *Bell* v. *Josselyn*, 3 Gray, 309.

"A case parallel to that now in hand is *Campbell* v. *Portland Sugar Co.* 62 Me. 552, where agents of the Portland Sugar Company had the charge and management of a wharf belonging to the company, and rented the same to tenants, agreeing to keep it in repair. They allowed the covering to become old, worn and insecure, by means of which the plaintiff was injured. The court held the agents were equally responsible to the injured person with their principals.

"Wharton, in his work on Negligence, (sec. 535,) insists that the distinction, in this class of cases, between non-feasance and misfeasance, can no longer be sustained; that the true doctrine is, that when an agent is employed to work on a particular thing, and has surrendered the thing in question into the principal's hands, then the agent ceases to be liable to third persons for hurt received by them from such thing, though the hurt is remotely due to the agent's negligence, the reason being, that the causal relation between the agent and the person hurt is broken by the interposition of the principal as a distinct center of legal responsibilities and duties, but that wherever there is no such interruption of causal connection, and the agent's negligence directly injures a stranger, the agent having liberty of action in respect to the injury,

then such stranger can recover from the agent damages for the injury. The rule, whether as stated by Mechem or Wharton, is sufficient to charge appellants with damages, under the circumstances disclosed in this record. They had the same control of the premises in question as the owner would have had if he had resided in Chicago, and attended to his own leasing and repairing. In that respect, appellants remained in control of the premises until the door fell upon the deceased. There was no interruption of the causal relation between them and the injured man. They were, in fact, for the time being, substituted in the place of the owner, so far as the control and management of the property was concerned. The principal that makes an independent contractor, to whose control premises upon which he is working are surrendered, liable for damages to strangers, caused by his negligence, although he is at the time doing the work under contract with the owner, (Wharton on Negligence, sec. 440,) would seem to be sufficient to hold appellants. The owner of cattle who places them in the hands of an agister is not liable for damages committed by them while they are under the control of the agister. It is the possession and control of the cattle which fix the liability, and the law imposes upon the agister the duty to protect strangers from injury by them. *Ward* v. *Brown,* 64 Ill. 307; *Ozburn* v. *Adams,* 70 id. 291.

"When appellants rented the premises to Mrs. Wheeler, in the dangerous condition shown by the evidence, they voluntarily set in motion an agency, which, in the ordinary and natural course of events, would expose persons entering the barn to personal injury. Use of the barn for the purpose for which it was used when the deceased came to his death, was one of its ordinary and appropriate uses, and might, by ordinary foresight, have been anticipated. If the insecure condition of the door fastenings had arisen after the letting to Mrs. Wheeler, a different question would be presented; but as it existed before and at the time of the letting, the owner or

persons in control are chargeable with the consequences. *Gridley* v. *Bloomington*, 68 Ill. 47 ; *Tomle* v. *Hampton*, 129 id. 379.

"Neither error is well assigned, and the judgment is affirmed."

Mr. L. H. BOUTELL, for the appellant :

It is an old and well established principle that an agent is not liable to third parties for damages caused by his negligence. He is so liable for misfeasance, but not for non-feasance. The reason assigned is, that there is no privity between the agent and third persons. He is liable to his principal for neglect, and the principal, alone, is liable to third persons. Story on Agency, sec. 308; 3 Sutherland on Damages, 60 ; *Bell* v. *Josselyn*, 3 Gray, 309.

An apparent exception to the rule is in the case of contractors, to whom the owner of land has surrendered its possession and control during the performance of the contract. In these cases, it is held that the contractor becomes, for the time being, a substituted principal, and so becomes liable to third persons for the negligence of himself or his employes; but for the same reason that, in this class of cases, the contractor is held liable to third persons for negligence, it is also held that there is no liability on the part of the owner. *Scammon* v. *Chicago*, 25 Ill. 424 ; *Loan and Trust Co.* v. *Doig*, 70 id. 52 ; *Hale* v. *Johnson*, 80 id. 185 ; *Kepperly* v. *Ramsden*, 83 id. 354.

But even in the case of a contractor, if the owner retains a supervisory power over the work, it is held that the owner, and not the contractor, is liable to third persons for acts of negligence. *Schwartz* v. *Gilmore*, 45 Ill. 455 ; *Chicago* v. *Joney*, 60 id. 387.

Messrs. CAMERON & HUGHES, for the appellee :

An agent is, in general, not liable to third parties for acts of negligence, nor for a mere non-performance of duty. As

such, he is only liable to his principal, and the principal is liable to the third party. To this general rule there are, however, certain well known and well recognized exceptions, among which are, that he is personally liable to third persons for misfeasance—for doing something which he ought not to have done. *Bell* v. *Josselyn*, 3 Gray, 309; 63 Am. Dec. 741.

Where a principal engages an agent to do a certain work and take entire control of it, and the principal does not interfere, but leaves it entirely with the agent, the agent, and not the principal, will be liable to third parties for injuries or damages sustained by the negligence or unskillful manner in which the work is done. *Hilliard* v. *Richardson*, 3 Gray, 349; 63 Am. Dec. 743; *Scammon* v. *Chicago*, 25 Ill. 424; *Schwartz* v. *Gilmore*, 45 id. 455; *Pfau* v. *Williamson*, 63 id. 16; *Kepperly* v. *Ramsden*, 83 id. 354; *Hale* v. *Johnson*, 80 id. 185.

Agents who have taken control of work for their principals are liable to third parties for torts committed by the agent's sub-employes. *Blake* v. *Ferris*, 5 N. Y. (1 Seld.) 48. And the test of liability, whenever the point was made, seems to have been, who was actually in control,—not who might possibly have controlled the manner in which the work was done or left undone, but who did, in fact, control. This question was squarely decided in *Pfau* v. *Williamson*, 63 Ill. 16, and *Kepperly* v. *Ramsden*, 83 id. 354.

Per CURIAM: We fully concur in the legal proposition asserted in the foregoing opinion, and deem it unnecessary to add to what is therein said in support of that proposition.

The judgment is affirmed.

*Judgment affirmed.*