## Harlan Gritton, by A. D. Gritton, Appellee, v. Illinois Traction, Inc., Appellant.

### Gen. No. 8,120.

1. NEGLIGENCE—*allegation in regard to attractive nuisance as surplusage in declaration.* In an action against an electric railway company for injuries to a boy coming into contact with a hanging and charged trolley wire at a place outside of a village where children played, allegations in the declaration that the track, poles and wires were an attractive nuisance may be treated as surplusage, where there is liability from violation of a duty to use ordinary care to protect the boy from receiving injury from the maintenance of wires charged with a high voltage of electricity, creating danger to children of tender years with the company's knowledge that the locality was used as a playground.

2. ELECTRICITY—*knowledge that premises were used by children as question for jury.* In an action against an electric railway company for injuries to a boy coming into contact with a hanging and charged trolley wire at a place outside a village under evidence that for two years nearly every child in the village had used that particular part of the right of way as a playground, it is a question for the jury whether the company could have known by the exercise of ordinary care that such use was being made of the right of way.

3. HARMLESS AND PREJUDICIAL ERRORS—*deprivation of substantial legal right.* A judgment should be reversed for an error in the trial of a case only when a party to the suit has been deprived thereby of some substantial legal right.

4. HARMLESS AND PREJUDICIAL ERRORS—*instruction on assessment of damages for personal injuries.* In an action for injuries to a boy

from coming into contact with a wire charged with electricity, it is harmless error to grant an instruction that the jurors may assess damages regardless of what the evidence pertaining thereto might be, where the injuries are undisputed, serious and permanent, and the verdict is not excessive.

5. DAMAGES—*when $6,000 not excessive for permanent injury to boy.* A verdict for $6,000 is not excessive for injuries to a boy nine years of age coming into contact with a charged electric wire, resulting in serious and painful wounds to various parts of his body and a loss of all the fingers of one hand.

Appeal by defendant from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the April term, 1927. Affirmed. Opinion filed October 31, 1927. Rehearing denied January 4, 1927.

HERBERT HAASE and CHARLES TROUP, for appellant.

ALFRED A. JOHNSON, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Harlan Gritton, a minor, who sues by his next friend, appellee, recovered a judgment in the circuit court of Vermilion county in the sum of $6,000, for personal injuries in an action on the case against Illinois Traction, Inc., appellant. The issues were presented by the first and third counts of the original declaration, the first additional count thereto and a plea of the general issue.

In the first count it is alleged, in substance, that on August 20, 1926, the defendant was possessed of and using and maintaining a switch track and right-of-way running north from its main line at the village of Tilton along and near the west boundary limits of said village to the Carbon Hill coal mine; that the right-of-way on each side of the tracks was grown up in a thicket of trees, brush and weeds, so as to shade the track and roadbed and was uninclosed, unguarded and unfenced; that defendant maintained a copper trolley feed wire strung on poles and set close to the east rail

of the track; that at a point 50 feet south of the over-crossing of the Chicago, Cincinnati, Cleveland & St. Louis Railroad said wire, for, to wit, one week, had been broken or cut and the end hung down to within one foot of the ground; that said track, roadbed, right-of-way and wire were and had been, for, to wit, one week, attractive to children for a place to play and a place of amusement, and were and had been for, to wit, one week, made use of by children of tender years as a playground and place of recreation and amusement and of which defendant knew or by the exercise of reasonable care could have known; that on said date while said wire was hanging as aforesaid, defendant caused a current of electricity, dangerous to life and limb, to pass through it; that it was the duty of the defendant, while maintaining said wire and causing electricity to pass through it, and while in possession of and using said premises, so attractive to children of tender years, to guard said premises and wire from children of tender years coming thereon, but defendant negligently failed so to do and while plaintiff, a boy of tender years, to wit, nine years of age, was on said date attracted to and walking along said track and right-of-way and exercising care and caution for his own safety, in consequence of its failure to fence, guard or protect said wire and premises so attractive to children of tender years, plaintiff came in contact with said wire and was injured, etc.

The third count sets forth the same descriptive matter, inducement, allegation of duty and breach thereof as averred in the first count, and then alleges that while plaintiff, a boy nine years of age, was, on said date, on the invitation of defendant, walking along said track and right-of-way and exercising due care for his own safety, in consequence of defendant's negligence in maintaining said hanging wire, carrying such current of electricity, plaintiff came in contact with the same and was injured.

In the first additional count the same general averments are made as in the other two counts and it is further alleged that said track, roadbed, right-of-way and wire were and had been theretofore made use of by children of tender years, as a playground and place of recreation and amusement and of which defendant knew, or by the exercise of ordinary care could have known, and defendant permitted a current of electricity, dangerous to life and limb, to pass through said broken and hanging wire while it was in possession and using said premises so known to defendant or which might have been known by the exercise of reasonable care, to be used by children of tender years as a playground and place of amusement and recreation; that it was defendant's duty to protect and guard said wire so the plaintiff, a child of tender years, would not be injured by the same, but in this defendant failed; that while plaintiff, a boy of tender years, to wit, nine years of age, was on said date attracted to and walking along said track and right-of-way and exercising care and caution for his own safety, he, in consequence of defendant's failure to fence, guard or protect said wire as aforesaid, and carrying such current of electricity, on the premises on which children of tender years were in the habit of playing, and which was a place of recreation and amusement as aforesaid, came in contact with said wire and was injured.

The main line of the Illinois Traction railroad runs east and west through the village of Tilton. Ell street runs north and south, the west line of which marks the western limits of the village. First street runs east and west, the north line of which makes the northern boundary of the village. About a quarter of a mile north of the village is the Carbon Hill coal mine. A branch railroad track runs south from this coal mine and joins the main track just west of Ell street. About 700 feet north of Tilton the branch

track is crossed by a trestle overcrossing of the Chicago, Cincinnati, Cleveland & St. Louis Railroad. At this point and for some distance north and south thereof, the branch track runs through a sort of ravine. West of the branch track and directly west of the western terminus of First street is the plant of the refractory company. First street does not extend westerly across the tracks to this plant, but a passageway has been made and is used by the public coming to and from the plant and the village of Tilton. The right-of-way of the switch track is 100 feet in width, but the track itself does not in all places run in the center of the right-of-way but frequently meanders away from the center. There was no fence of any kind along the eastern side of the right-of-way, and, with the exception of a fence around the refractory plant, there was none on the western side of the right-of-way. The trolley feed wires were carried by brackets fastened to poles erected east of the track from First street north to the overhead crossing mentioned. Along the track on either side was a dense growth of trees, bushes, vines and weeds. Some of the trees were red haw trees and there were blackberry, raspberry and gooseberry bushes, strawberry plants, flowers and grapevines. Running along side of the track was a ditch or small stream. Easy access was had to the track from the west end of First street and there was nothing to indicate the boundary lines of the right-of-way. The evidence introduced by appellee tended to show that children residing in Tilton, in the spring and summer of 1926 and for several years prior thereto, had been in the habit of walking north on this branch or switchtrack to the overhead crossing of the Chicago, Cincinnati, Cleveland & St. Louis Railroad, and used the vicinity thereof as a playground; that the boys built huts and caves and played at being cowboys and Indians, made dams in the stream, caught minnows and went in swimming; that the girls also

built little houses on each side of the track and visited back and forth, and that all the children picked berries and gathered the red haws and chased each other back and forth across the track.

The evidence further tends to show that on August 20, 1926, a feed wire which stretched along the tracks from pole to pole had been broken or cut and a portion thereof was hanging from a bracket to within about a foot from the ground. At this time the use of the track had been practically abandoned by appellant, the last car having passed over it some weeks previously. The evidence further tends to show that this wire had been hanging there for several weeks prior to the 20th day of August. On this day appellee, age nine, with his cousin, Lura Marie Gritton, his sister Helen, and his brother Frank, all of whom were younger than he, went up along the track near the overhead bridge above mentioned. Appellee began cutting in the bushes to get a stick for a "nigger shooter" when, seeing the wire hanging down from the bracket attached to the pole, he caught hold of it and was immediately rendered unconscious. His mother was called who pulled him away from the wire and carried him to the hospital. There is no dispute over his injuries, which consisted of a burn on the back of his head about the size of a silver dollar, numerous burns upon the back and a large burn on the calf of the right leg the size of a man's hand, which left a large raw surface for many days. The most serious injury, however, was to the left hand that had grasped the wire, the fingers of which were completely deadened and all of them later sluffed away and were entirely removed. The palm of the hand was also severely burned. He was confined to the hospital for 46 days and after he left the hospital received treatment at the doctor's office every second or third day for a month or more.

Some of the officers and employees of appellant testified that they had never had any knowledge that children were in the habit of playing on the right-of-way at the place in question. Several other witnesses testified on behalf of appellant that they had never seen any children playing at this place, but there was evidence for appellee to the effect that nearly every child living in the village of Tilton used this locality for a common playground.

The first point made by appellant is that appellee cannot recover because the maintenance of its switch track and the trolley poles and wires did not create an attractive nuisance, and, even if it did, the place where the accident occurred was not visible from any point where appellee had a lawful right to be. *McDermott v. Burke*, 256 Ill. 401, 402; *St. Louis V. & T. H. R. Co. v. Bell*, 81 Ill. 76. In our opinion the answer to each of these propositions is, that it is immaterial under the facts in this case whether the conditions mentioned constituted an attractive nuisance or not, and the allegations in the declaration to that effect may be treated as surplusage, because the maintenance of the trolley and feed wires charged with a large voltage of electricity created an agency dangerous to life and limb and appellant had knowledge that the locality where this agency was maintained, was commonly used as a playground for little children under the age of discretion, and it was in duty bound to at least use ordinary care to protect them from receiving injuries thereby. In the case of *City of Pekin v. McMahon*, 154 Ill. 141, 148, the court cited with approval the following proposition: "The owner of land, where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in safe condition; for they being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees." In the case of *Ramsay v. Tuthill*

*Bldg. Material Co.,* 295 Ill. 395, the Supreme Court very lucidly and forcibly announces the principle which we believe is applicable to the facts in this case. It is there said: "It is not necessary, to make a defendant liable, that the attractive and dangerous thing should be visible from the street and that children should have been attracted to the premises by it. If an owner maintains dangerous conditions upon his premises to which he permits children to come he must use ordinary care to guard them against danger which their youth and ignorance prevent them from appreciating. There is no implied invitation from the mere existence of a dangerous attraction which is not discoverable off the premises, but if to the knowledge of the owner children habitually come upon his premises where a dangerous condition exists to which they are exposed, the duty to exercise care for their safety arises, not because of an implied invitation but because of his knowledge of unconscious exposure to danger which the children do not realize."

It is next urged that there is no direct proof that appellant had any actual knowledge of such use of its right-of-way by children and without such actual knowledge on its part it cannot be held liable for the injuries sustained. If appellant's knowledge of the defective condition of the feed wire only had been involved, direct proof would not have been necessary to show such knowledge, but proof that it had been in such defective condition for such a length of time that appellant, by reasonable or ordinary care, could have discovered its condition, would have been sufficient. We see no reason why another or different rule should be applied to its knowledge of the use of the right-of-way by the children. The evidence for appellee tended to show that for at least two years nearly every child in the village of Tilton used that particular part of the right-of-way as a playground and it was for the jury to determine, as a question of fact, from the evidence,

whether appellant by the exercise of ordinary care could have known that such a use was made of its right-of-way.

What we have heretofore said in regard to the law applicable to this case, disposes of all the errors assigned to the giving or refusal of the instructions except as to instruction number 2, given on behalf of the plaintiff, which is as follows: "The court instructs the jury that if you find for the plaintiff you will assess his damages at such a sum of money as in your opinion will be reasonable and just compensation for the injuries he has sustained. In estimating the damages, you will take into consideration the pain, if any, he has sustained by reason of such injuries, if any; and if you believe from the evidence that his injuries, if any, are permanent, and that hereafter his ability to labor and earn money will be impaired by reason of such injuries, if any, then you will take this into consideration in estimating the damages." This instruction informs the jurors that they can assess such damages as, in their opinion, may seem reasonable and just, regardless of what the evidence pertaining thereto might be. There is no principle of law more elementary than that a jury should decide the issues in a case from the facts proven by the evidence. Nothing can be said in favor of this instruction and similar instructions have been so often condemned that it would serve no good purpose to reiterate the cases here, but they are numerous and unanimous. However, it is not the province nor the duty of an appellate tribunal to reverse judgments on every error that may intervene in the trial of a case, but should do so only when a party to a suit has been deprived of some substantial legal right. If there had been any contest as to the extent of the injuries or if the amount of the damages fixed by the verdict had savored of excessiveness, it would be our plain duty to reverse the judgment and remand this case for a new trial. But the injuries in this case

404          APPELLATE COURTS OF ILLINOIS.

are undisputed, serious and permanent. This young boy, appellee, besides having received serious and painful wounds to other parts of his body, will have to go through life, so far as the use of his hands is concerned, with a 50 per cent physical efficiency. The amount of the verdict is not excessive for the injuries sustained and the giving of it was harmless error.

The judgment of the circuit court is affirmed.

*Affirmed.*

