Norman Farmer, Administrator of the Estate of Lloyd Farmer, Deceased, Appellant, v. The Alton Building and Loan Association, Appellee.

Opinion filed March 9, 1938.

MANUEL M. WISEMAN, of Alton, and PHILIP G. LISTE-MAN, of East St. Louis, for appellant.

O'NEILL & O'NEILL, of Alton, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

The defendant, The Alton Building and Loan Association, owned a lot located in the village of East Alton and by verbal arrangement leased it to one Fentress from month to month. He took possession and occupied it as a family residence. Fifteen days after he began to occupy the premises, Lloyd Warner Farmer, plaintiff's intestate, a boy five and a half years old, while playing on the lot with Fentress' children, fell into a cesspool located on the back of the lot and was drowned. Plaintiff started this suit to recover damages for said alleged wrongful death.

The jury returned a verdict for the plaintiff and assessed his damages at $4,750. The defendant then filed a motion for a judgment notwithstanding the verdict, which was overruled and a motion for a new trial which was granted. Plaintiff was granted leave to appeal from that order.

The record does not disclose which rulings the court deemed erroneous and upon which the new trial was ordered. Defendant in its answer to plaintiff's peti-

tion for leave to appeal states that it has no objection to granting leave to appeal but contends that the court erred in overruling its motion for judgment notwithstanding the verdict and in denying its original motion to dismiss the complaint and contends that it can attack the insufficiency of the pleading on its motion for a judgment notwithstanding the verdict.

Prior to the adoption of the Civil Practice Act a motion for a judgment notwithstanding the verdict was not available to a defendant. It was a privilege given solely to the plaintiff and was a judgment rendered in favor of the plaintiff without regard to the verdict obtained by the defendant. *Teehan v. Union Bridge Co.,* 84 Ill. App. 532; *Aldrich v. Mathias,* 141 Ill. App. 590.

Section 68 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 192; Jones Ill. Stats. Ann. 104.068] provides that in all civil actions at law where either party shall at the close of testimony move for a directed verdict that the court may reserve its decision and submit the case to the jury and after recording the verdict may if it concludes that the motion for a directed verdict should have been granted allow the same and enter a judgment notwithstanding the verdict.

Supreme Court Rule 22 is as follows: "The power of the court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would have been the duty of the court to direct a verdict without submitting the case to the jury."

This section changes the rule under the former practice and permits either party to file a motion for judgment notwithstanding the verdict but its only function is to raise the question as to whether the motion for a directed verdict should have been allowed. It has been held that the trial court in passing upon a motion for judgment notwithstanding the verdict has no more authority to weigh and determine controverted ques-

tions of fact, under the Civil Practice Act than under the Practice Act of 1907. *Gardiner v. Richardson,* 293 Ill. App. 40; *Capelle v. Chicago & N. W. Ry. Co.,* 280 Ill. App. 471; *Illinois Tuberculosis Ass'n v. Springfield Marine Bank,* 282 Ill. App. 14.

Under the former practice it was held that a motion to exclude the evidence and for a directed verdict was not a proper method of questioning the legal sufficiency of the declaration as a pleading. *Swift & Co. v. Rutkowski,* 182 Ill. 18; *Klofski v. Railroad Supply Co.,* 235 Ill. 146; *Carson-Payson Co. v. Peoria Terrazzo Co.,* 288 Ill. App. 583, and there is nothing in said section 68 or Rule 22 which extends or broadens the scope of inquiry on such a motion so as to reach a defect in the complaint. The other points alleged in defendant's motion for a judgment notwithstanding the verdict were in reference to the court's rulings on the admission and rejection of evidence. These questions are likewise outside the functions of such a motion.

Defendant's motion to dismiss the complaint, which was filed before its answer, alleged in general terms that the complaint did not state a cause of action. It was properly overruled for failure to point out wherein it was defective as required by section 45 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 169; Jones Ill. Stats. Ann. 104.045]. *Hitchcock v. Reynolds,* 278 Ill. App. 559.

Sub-paragraph 3, section 42 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 166; Jones Ill. Stats. Ann. 104.042] provides, that all defects in pleading, either in form or substance, not objected to in the trial court, shall be deemed to be waived and since defendant did not file a motion in arrest of judgment and did not have a sufficient motion to dismiss, all defects in the complaint either in form or substance are on this appeal deemed to have been waived.

Defendant's motion for a new trial specified 21 different grounds, which ones the court sustained is not

shown by the record, but counsel have discussed those pertaining to defendant's motion for a directed verdict, refusal of defendant's instructions, excessiveness of the verdict, and in not granting a new trial for newly discovered evidence.

Defendant's answer admits the ownership of the lot, the presence of the cesspool, and its use by its tenants, that it leased the premises to Fentress and agreed to keep the same in repair but avers that at the time of the leasing there was no necessity for any repairs. It denies that the covering over the cesspool was in a dangerous condition when Fentress moved in or at any other time and that it had no knowledge of its condition.

The evidence discloses that the cesspool was located on the rear of the lot, was 7 or 8 feet deep about 4 feet in diameter and was covered with two-inch boards with approximately a foot of earth on the boards and this covered with dead weeds, cinders and other debris forming a mound about 12 feet in diameter.

Deceased was residing with his parents on a lot on the opposite side of the same block, the lots contacting at the corners. There was no fence or other obstruction to mark the boundary line between the lots. About 3 p. m. April 6th deceased left his home with the consent of his mother, to play with the Fentress children and other children of the neighborhood ranging in ages from two to six years. Deceased was seen playing with these children on this lot near the Fentress garage and 8 to 10 feet from the cesspool. In about 30 minutes he disappeared and search revealed that he had gone onto the earth covering the cesspool and the boards underneath had given away dropping him into the pool where he was drowned.

Defendant had a maintenance foreman for this and other properties and another agent to collect rents from Fentress and other tenants. There is evidence that the neighbors to the Fentress property had as

early as June preceding the accident observed an opening in the top of the pool 12 to 18 inches in diameter and had on at least two occasions, prior to the occupancy by Fentress told the maintenance foreman and rent collector of the condition and that once the foreman went to the pool and looked at it and remarked that it would have to be repaired. Both agents denied any such statements or examination of the pool but the maintenance foreman testified he checked the property for defects a few days before Fentress moved, that he went near the mound of earth over the pool, that it looked all right and he reported to the defendant that the property had been examined and found to be in order.

The tenant, Fentress, testified he had no knowledge of the location of the cesspool or its condition until the day preceding the accident when a neighbor called his attention to it and that he had prior to the day of the accident invited deceased to come to his yard and play with his children.

In plaintiff's brief it is stated that his case is predicated upon the theories that the defendant is liable because, 1. The defendant at the time of the letting agreed to keep the premises in a proper state of repair and failed after notice to fulfill that agreement. 2. That the defendant rented the premises knowing that a nuisance and dangerous condition existed thereon and the renting thereof did not absolve him from liability in this case.

The rule is that the relation of landlord and tenant creates no obligation or duty on the landlord to make repairs unless he has assumed such duty by express agreement with the tenant. In the absence of special agreement the tenant takes the premises as he finds them, subject to his own risk and there is no implied covenant that they are fit for habitation or that they are in any particular condition of repair. *Sunasack v.*

*Morey,* 196 Ill. 569; *West Chicago Masonic Ass'n v. Cohn,* 192 Ill. 210; *Borggard v. Gale,* 107 Ill. App. 128.

In *Cromwell v. Allen,* 151 Ill. App. 404, this court quoting from Jones on Landlord and Tenant said, "The landlord's responsibility for damages caused by his failure to perform his contract to repair rests altogether upon his breach of contract. It may be stated as a general rule that a landlord who has covenanted to repair, is not liable in tort for personal injuries resulting from the want of repair. Such injuries are too remote to be recovered as damages for breach of contract and the duties arising from the relation of landlord and tenant are not increased by such a contract in respect to the duty of the landlord to provide for the personal safety of the tenant."

In a further discussion of the difference between an action for damages arising out of a breach of contract to repair and an action *ex delicto* the court said, "Where injuries under such circumstances were admittedly too remote to be recovered in an action of contract, it was claimed they could be recovered in an action of tort. But to permit a recovery for such damages, based on contract simply because it is in the form of an action of tort, would be making a distinction that could not be justified by reason or authority. There must be something more than a mere failure on the part of the landlord to make the repairs he has agreed to make. It makes no difference whether the form of the action is ex delicto or ex contractu, the real and substantial gravamen of the complaint is the alleged breach of contract, and in such a case the same law is applicable to both classes of action."

A landlord under contract to repair may under certain conditions be liable for damages for personal injuries by reason of a negligent failure to make repairs but there can be no such liability unless the covenant to repair amounts to a covenant to keep the premises

reasonably safe; or unless the covenant was made under such circumstances as plainly indicated that the damages claimed were within the contemplation of the parties at the time of making the contract. The ordinary covenant to keep the premises in repair is generally held to mean that the repairs will be made on notice and is not in default until so notified. *Cromwell v. Allen, supra.*

In this case the allegation in the complaint that defendant agreed with the tenant to repair, the answer which admits it and the evidence can be construed only as an agreement to repair generally. No mention was made of the cesspool and the tenant did not give the defendant any notice to repair it. Plaintiff cannot sustain his verdict on this theory.

As stated the general rule is that a landlord is not bound to make repairs unless he has assumed such duty by express agreement with the tenant and is not liable for damages caused by a defective condition of the premises, but there are certain well recognized exceptions to the general rule, (a) as where a landlord leases premises with latent defects that are attendant with danger to an occupant, which a careful examination would not disclose, but which are known to exist by the landlord and are not known to the tenant, and the tenant is damaged by reason of such defect, *Borggard v. Gale, supra; Sunasack v. Morey, supra,* and in this exception the liability has been extended to include injuries to members of the tenant's family and servants, *Reichenbacher v. Pahmeyer,* 8 Ill. App. 217; *Coyne v. Laubenheimer,* 225 Ill. App. 50, and to a third person who is upon the premises at the express or implied invitation of the tenant. *Baird v. Shipman,* 132 Ill. 16, (b) where the landlord demises premises with a known nuisance upon them, it being thereby presumed that he authorized its continuance, and a third party who is on his own property which adjoins or on a side-

walk that abutts on the property and is injured by reason of the nuisance, *Stephani v. Brown,* 40 Ill. 428; *Gridley v. City of Bloomington,* 68 Ill. 47; *Boyce v. Tallerman,* 183 Ill. 115, (c) and where premises are leased with a known nuisance upon them and the landlord knows or should know that children of tender age habitually frequent the premises and are likely to trespass upon that part of the premises where the nuisance is located, and the nuisance is of such a character that he knows or should have known that it involves an unreasonable risk or hazard that is likely to result in death or serious bodily injury to such children. *Ramsay v. Tuthill Bldg. Material Co.,* 295 Ill. 395.

In this latter class the liability is not extended to children of all ages but only to those of such tender years that they are not capable of discerning and avoiding danger. A young child upon the premises of another may in a sense be a technical trespasser but in law he is incapable on his own volition to acquire the status of being either a trespasser, a visitor, a licensee or invitee, *Donk Bros. Coal & Coke Co. v. Leavitt,* 109 Ill. App. 385.

In *Ramsay v. Tuthill Bldg. Material Co., supra,* the court in discussing the implied invitation that is adopted in the attractive nuisance cases said ''There is no implied invitation from the mere existence of a dangerous attraction which is not discoverable off the premises; but, if to the knowledge of the owner, children habitually come upon his premises, where a dangerous condition exists to which they are exposed, the duty to exercise care for their safety arises, not because of an implied invitation but because of his knowledge of unconscious exposure to danger which the children do not realize.'' *Gritton v. Illinois Traction, Inc.,* 247 Ill. App. 395.

There was sufficient evidence in the record to justify submitting the case to the jury upon the question as to

the defective condition of the covering over the cesspool, defendant's knowledge of the same at the time of the leasing, but there is no evidence to warrant its submission on the question of defendant's knowledge that children habitually played on these premises. There is evidence that the tenant had children who lived with him on the premises and the neighbors testified that they had seen children playing on the premises but there is no evidence which tends to show that defendant knew it or should have known it.

Plaintiff tendered no instructions and defendant tendered three. All of defendant's instructions were refused and properly so for the reason that they were drawn on the theory of an attractive nuisance which is not involved in the case.

For the reason stated the order of the trial court in granting a new trial was correct and is affirmed.

*Affirmed and remanded.*