(No. 31910.—

GREGORY WAGNER, Appellant, vs. JOHN F. KEPLER, Appellee.

*Opinion filed November 27, 1951—Rehearing denied Mar. 17, 1952.*

DELMAR J. HILL, and HARRY TEUNE, both of Chicago, for appellant.

SAMUEL LEVIN, of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Gregory Wagner, a minor, by John Wagner, his father, brought an action in the circuit court of Cook County against the defendant, John F. Kepler, for injuries sustained when, as the result of an allegedly defective handrail, he fell from a landing on the rear staircase of a building owned by defendant. A jury trial resulted in a verdict for plaintiff for $5000 and judgment was entered on the verdict. The Appellate Court for the First District reversed the judgment, without remanding the cause. We have granted plaintiff's petition for leave to appeal.

Defendant owns a two-story building in Chicago containing two apartments, one on each floor. Plaintiff lived in the first-floor apartment. On October 1, 1944, or on April 1, 1945, the date being disputed, defendant rented the second-floor apartment to Howard Haines on a month-to-month tenancy. This apartment has a separate rear staircase which originates in the back yard, abuts the rear wall of the building on one side, and consists of seven steps leading to a small landing adjoining the rear entrance to the second-floor apartment. Both the side of the staircase away from the building and the two exposed sides of the landing are protected by a wooden railing.

Plaintiff and other children often played on the staircase and landing. Defendant visited the property frequently. On July 15, 1945, plaintiff, then three and one-half years of age, was playing on the landing, when the railing broke and he fell six feet to the sidewalk. The evidence tended to show the railing had rotted at the point where it joined the building. As to the condition of the railing prior to the accident, the evidence is directly conflicting. Haines testified it was firm and sturdy. One of plaintiff's brothers stated it had been wobbly since August, 1944, but, on defendant's objection, this testimony was stricken as being too remote. Later, the same witness testified, without objection, that the railing had been shaky since July, 1944.

The case was submitted to the jury on a count charging that at the time of the leasing of the second-floor apartment to Haines, defendant knew or in the exercise of reasonable care ought to have known that the railing was in a dangerous condition and that children of tender years frequently played on the landing and would continue to do so. Liability was thus predicated upon the theory that defendant leased the second-floor apartment to Haines with an existing dangerous defect. Plaintiff has at all times expressly disclaimed the application of the attractive nuisance doctrine. The trial judge held that a month-to-month tenancy

is, in contemplation of law, a new demise at the beginning of each month and the jurors were so instructed. As a result, the principal questions presented to the jury were whether the railing involved was defective on July 1, 1945, and whether defendant knew, or should have known, of this condition. The Appellate Court reversed, holding that a month-to-month tenancy does not constitute a reletting at the beginning of each successive month and that there was no evidence tending to show that the alleged dangerous condition existed at the time of the original letting of the second-floor apartment.

To reverse the judgment of the Appellate Court, plaintiff contends that in a tenancy from month to month there is a new letting at the beginning of each month and that, in any event, there was evidence that the defect existed at the time of the original letting of the second-floor apartment. Defendant adds the contention that the judgment of the Appellate Court should be affirmed because plaintiff has no cause of action. The nature of this contention requires that it be considered first. While defects in a complaint containing an incomplete or otherwise insufficient statement of a good cause of action may be waived, the question of whether a complaint absolutely fails to state or indicate any ground of liability which the law will recognize can be raised at any time. *Lasko* v. *Meier,* 394 Ill. 71; *Owens-Illinois Glass Co.* v. *McKibbin,* 385 Ill. 245.

Ordinarily, in the absence of an agreement to the contrary, the lessee and not the owner of a building is liable for injuries received by third persons as the result of a failure to keep the building in repair. (*Murphy* v. *Illinois State Trust Co.* 375 Ill. 310; *Marcovitz* v. *Hergenrether,* 302 Ill. 162.) But where an owner leases property with actual or constructive notice of a defective and dangerous condition which remains uncorrected, the owner, notwithstanding the lease, is liable to strangers for injuries caused by the defect to the same extent as if he were in con-

trol and possession of the property. *Marcovitz* v. *Hergenrether,* 302 Ill. 162; *West Chicago Masonic Ass'n* v. *Cohn,* 192 Ill. 210; *Baird* v. *Shipman,* 132 Ill. 16; *Tomle* v. *Hampton,* 129 Ill. 379.

While it is generally true, as defendant contends, that infants have no greater rights to go upon the land of others than adults and their mere minority imposes no duty upon landowners to expect them or prepare for their safety, (*Burns* v. *City of Chicago,* 338 Ill. 89; *McDermott* v. *Burke,* 256 Ill. 401,) recognized exceptions exist where the landowner maintains an attractive nuisance upon the premises, (*Wolczek* v. *Public Service Co.* 342 Ill. 482; *Stollery* v. *Cicero and Proviso Street Railway Co.* 243 Ill. 290,) or, even in the absence of a dangerous attraction, where the owner knows that small children customarily play on the property. In the latter situation, where an owner knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of discovering the danger or appreciating the risk involved, and where the expense or inconvenience to the owner in remedying the condition is slight compared to the risk to the children, the duty devolves upon the owner to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. *Ramsay* v. *Tuthill Building Material Co.* 295 Ill. 395; *Gritton* v. *Illinois Traction, Inc.* 247 Ill. App. 395; Restatement of the Law of Torts, sec. 339; Prosser on Torts, sec. 77.

In the *Ramsay case* the court said: "There is no implied invitation from the mere existence of a dangerous attraction which is not discoverable off the premises, but if to the knowledge of the owner children habitually come upon his premises where a dangerous condition exists to which they are exposed, the duty to exercise care for their safety arises, not because of an implied invitation but be-

cause of his knowledge of unconscious exposure to danger which the children do not realize."

In the *Gritton case,* a boy nine years of age was injured by a broken electric feed wire hanging down almost to the ground on a virtually abandoned switch-track of an electric railroad company where children were accustomed to play. The question of whether the switch track constituted an attractive nuisance was adjudged to be immaterial and the traction company, having knowledge that the locality where it maintained dangerous high-voltage wires was commonly used as a playground by little children, was held to be under a legal duty to exercise ordinary care to protect them from injuries. *Farmer* v. *Alton Building and Loan Ass'n,* 294 Ill. App. 206, is to much the same effect.

A good cause of action was stated.

The next question requiring consideration is whether a tenancy from month to month is a single continuous tenancy or constitutes a new letting at the beginning of each month. If, in contemplation of law, there is a re-entry and reletting at the beginning of each month, then it was only necessary for plaintiff to show that the defect in the railing existed at the beginning of the month during which the accident occurred, namely, July 1, 1945. Otherwise, it would be incumbent upon plaintiff to show that the defect existed at the time of the original leasing of the second-floor apartment, which was either April 1, 1945, or October 1, 1944.

The question thus presented has not heretofore been passed upon by this court. In support of the proposition that in a month-to-month tenancy there is a new demise at the beginning of each month, plaintiff relies upon *Donk Brothers Coal and Coke Co.* v. *Leavitt,* 109 Ill. App. 385, *Borman* v. *Sandgren,* 37 Ill. App. 160, *Griffith* v. *Lewis,* 17 Mo. App. 605, *Gandy* v. *Jubber,* 5 Best & Smith, 78, and *Perkins* v. *Weibel,* 132 Conn. 50. The decision in *Donk*

*Brothers Coal and Coke Co.* v. *Leavitt,* 109 Ill. App. 385, is based solely upon the decision in *Borman* v. *Sandgren,* 37 Ill. App. 160, which, in turn, follows *Griffith* v. *Lewis,* 17 Mo. App. 605, and the English case of *Gandy* v. *Jubber,* 5 Best & Smith, 78, without any discussion. The *Griffith case* is also directly traceable to the *Gandy case* through an earlier decision in *Clarke* v. *Thatcher,* 9 Mo. App. 436. *Gandy* v. *Jubber,* 5 Best & Smith, 78, the ultimate authority for the rule asserted, holds that where propery is leased under a tenancy from year to year the owner is liable for injuries resulting from a defective condition existing prior to the beginning of any year.

It must be noted, however, that the rule announced by the Court of Queen's Bench in *Gandy* v. *Jubber,* 5 Best & Smith, 78, is not the law in England. An appeal in the case was taken to the Court of Exchequer Chamber. Although the plaintiff, upon the recommendation of the court, accepted a *stet processus* and, consequently, the opinion prepared by the court was not delivered, the opinion was published nevertheless. This decision holds that in a tenancy from year to year there is no recommencing of the tenancy or reletting at the beginning of each year, and is reported in *Gandy* v. *Jubber,* 9 Best & Smith, 15. The decision of the Court of Exchequer Chamber was deemed to be controlling as to tenancies from year to year but not as to tenancies from week to week in *Sandford* v. *Clarke,* 21 Q. B. Div. 398, and later was extended to week-to-week tenancies in *Bowen* v. *Anderson,* (1894) 1 Q. B. 164. None of the Illinois or Missouri cases relied upon by plaintiff discuss or even mention the decision of the Court of Exchequer Chamber in the *Gandy case* nor any of the later English cases reaffirming the rule that a periodic tenancy is a single continuous tenancy.

*Perkins* v. *Weibel,* 132 Conn. 50, also cited by plaintiff, stands upon a different footing. Other decisions in the same jurisdiction make it clear that the rule prevailing there

that in a tenancy from month to month each month is a new tenancy is founded upon a statute providing that "parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only." (*Corrigan* v. *Antupit,* 131 Conn. 71; *Williams* v. *Apothecaries Hall Co.* 80 Conn. 503.) Moreover, the Supreme Court of Errors of Connecticut has expressly recognized that in England, and in other jurisdictions in this country, where a month-to-month tenancy does not of itself terminate at the end of each month but requires notice from the landlord to bring it to an end, the landlord might well be regarded as not being liable for injuries resulting from defects arising after the tenant went into possession. *Corrigan* v. *Antupit,* 131 Conn. 71.

The proposition that a tenancy from month to month is continuous and does not constitute a new demise at the beginning of each month, urged by defendant and adopted by the Appellate Court, is supported both by reason and authority. It has long been the prevailing rule in England. The first case in Illinois in accord with the English cases is *Hull* v. *Sherrod,* 97 Ill. App. 298, where it was said: "We cannot agree to the proposition that the tenancy in this case so terminated at the end of each month as to amount to a surrender of possession and control, and a new leasing and new possession for each succeeding month. The tenancy might have been terminated by either party upon giving the other thirty days' previous notice, but this was not done. There was not a day from the time the contract was made that it was not in full force, nor a day from the time that Mrs. Campbell [tenant] entered into possession that she did not have exclusive possession and control of the whole premises under that contract. By the letting to Mrs. Campbell and her entrance into possession, appellant [owner] was divested of possession and control, and he was not at any subsequent date re-invested nor did

he in any manner at any time resume control or assume the right to do so." *Donk Brothers Coal and Coke Co.* v. *Leavitt,* 109 Ill. App. 385, relied upon by plaintiff, does not mention the *Hull case.* Other decisions of the Appellate Court applying the rule that a month-to-month tenancy does not result in the creation of a new tenancy at the beginning of each month are *Strong* v. *Soodvoisky,* 141 Ill. App. 183, and *Soibel* v. *Oconto Co.* 299 Ill. App. 518.

The same rule has also been adopted in Washington, California and Alabama. (*Ward* v. *Hinkleman,* 37 Wash. 375; *Janofsky* v. *Garland,* 42 Cal. App. 2d 655; *Arbuthnot* v. *Thatcher,* 237 Ala. 593.) As stated by the Supreme Court of Washington: "The legal fiction that there is a re-entry and re-letting at the beginning of every month is too refined to meet our approval." (*Ward* v. *Hinkleman,* 37 Wash. 375.) The doctrine now prevailing in our Appellate Courts is also supported by texts and encyclopedias. "A tenancy from year to year does not come to an end and recommence with each year, but the tenant has an interest for one year certain with a growing interest during every year thereafter springing out of the original demise. * * * The same principle applies to any other periodic tenancy, such as one from month to month or week to week." (1 Tiffany, Real Property, 3d ed. sec. 167.) To the same effect, see 32 Am. Jur., Landlord and Tenant, sec. 72. In 18 Am. & Eng. Ency. Law 2d ed., at p. 244, the statement is made that, "In case of periodical tenancies the better doctrine seems to be that the tenancies for the several recurring periods are to be considered as constituting a continuing tenancy and not a renewal of the lease for each new period, and therefore the liability of the landlord depends upon the condition of the premises at the time of the beginning of the first periodical tenancy." A tenancy from month to month partakes of the nature of a tenancy at will and once created exists for an indefinite period. (51 C.J.S., Landlord and Tenant, sec. 145; 32 Am.

Jur., Landlord and Tenant, sec. 71.) Being a tenancy of uncertain duration, it cannot be said to be a tenancy for a definite period of one month or a succession of tenancies for definite periods of one month each. Furthermore, since, in the absence of an agreement or contractual or statutory provisions to the contrary, a tenancy from month to month is only terminable by either party upon giving proper and timely notice of one month, at common law, (51 C.J.S., Landlord and Tenant, sec. 150,) or of thirty days by landlords, by statute, (Ill. Rev. Stat. 1949, chap. 80, par. 6,) it follows that a tenancy from month to month is a single tenancy, continuous and uninterrupted until so terminated. The Appellate Court correctly held that the leasing of the second-floor apartment on a month-to-month tenancy did not result in a new letting at the beginning of each month.

A tenancy from month to month being continuous, it was incumbent upon plaintiff to show that the railing in question was defective at the time of the original leasing. In this connection, plaintiff contends that the Appellate Court erred in holding that there was no evidence tending to show the existence of the defect at the time defendant leased the second-floor apartment. The contention made is well-founded. One of plaintiff's brothers testified that the railing on the rear landing of the upper apartment was loose as early as July, 1944. Defendant admits there is evidence to this effect, but maintains that plaintiff, in relying upon the foregoing testimony of his brother, is advancing a new and different theory of the case for the first time in this court. This is not the case. The complaint alleges that the defect existed at the time of the original leasing and plaintiff's theory of the case is, and always has been, that defendant is liable for leasing the second-floor apartment with an existing dangerous defect. While it is true that the jurors were erroneously instructed that there was a new lease every month, plaintiff's evidence established *prima facie* that the defect existed at the time of the original

leasing, and defendant was only entitled to a judgment reversing the judgment for plaintiff and remanding the cause for a new trial. The Appellate Court erred in reversing without remanding. There must be a new trial.

The judgments of the Appellate Court for the First District and of the circuit court of Cook County are each reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*