Harold Douglas Kuhn, a Minor, Who Sues by His Father and Next Friend, Harold Kuhn, Jr., and Harold Kuhn, Jr., Plaintiffs-Appellees, v. Edmund F. Goedde, Defendant-Appellant, and Victor J. Bartosik, Defendant.

Gen. No. 60–F–11.

Fourth District.

May 27, 1960.

Edward G. Maag and Walker and Williams, of East St. Louis (R. G. Church, of counsel) for appellant.

C. E. Heiligenstein, Listeman and Bandy, of East St. Louis, for appellee.

HOFFMAN, JUSTICE.

On November 12, 1957, the defendant Goedde was in the process of constructing a dwelling on a lot he owned in a residential area of Belleville, Illinois. The various portions of the construction work were contracted by defendant Goedde to different contractors, one of whom was the co-defendant, Bartosik. On said date, the concrete foundation had been poured but a large mound of dirt, approximately 6 or 7 feet high, remained from the basement excavation. For the removal of this dirt, defendant Goedde contracted with defendant Bartosik, a hauling contractor.

Bartosik owned two trucks and a farm tractor which had a high lift attachment for loading materials onto the trucks. The tractor did not have a key locking ignition system, but rather was started and stopped by a "killer switch" which was described as a mechanism not unlike that found on a motorized lawnmower and which operated by the pulling out and the pushing in of the switch button. Bartosik did his own work with the assistance of an employee. On the day in question, Bartosik went upon Goedde's premises to remove the pile of dirt. Bartosik drove the tractor to the site, and his employee brought along a truck. Bartosik, himself, then left to work for another customer with the remaining truck, and his employee remained alone on Goedde's lot.

Bartosik's employee proceeded to load the truck and haul away the dirt. He hauled from 8:00 a. m. until close to 4:00 p. m. Each trip away from the premises

125

took about 12 minutes. He was making his last trip when he left, leaving the tractor in reverse gear, having killed the motor by pushing in on the killer switch. He left in the truck to deliver the load across town. The plaintiff, a boy of ten years, and two other boys his age, on their way home from school, went on the lot to play somewhere around 3:45. They climbed on the tractor when Bartosik's employee left, and began playing with the buttons. The tractor suddenly started, plaintiff fell off under the back wheel, and was injured when the wheel passed over him. Shortly thereafter, Bartosik's employee returned and found the plaintiff lying next to the rear wheel of the tractor.

There was evidence that children frequently played on the lot, and that defendant Goedde knew this. However, there is no evidence that defendant Goedde knew that Bartosik was working on the lot on the day in question, or that he had a tractor there that day. Furthermore, there is no evidence that Goedde knew that the tractor Bartosik used was operated by a "killer switch" and not the conventional ignition key. There was evidence that Goedde knew that Bartosik would move the dirt by means of a high lift attached to a tractor and that the tractor had been on Goedde's lot on one previous occasion removing dirt, about a month before the time plaintiff was hurt, but the proofs show that the tractor had not been left unattended at that time.

The case was tried by a jury and verdict rendered against both defendants, Bartosik and Goedde, in the sum of $12,500. Post-trial motions for judgment notwithstanding the verdict made by both defendants were denied. Subsequently, Bartosik bought his peace for $5,000. This appeal, therefore, only concerns Goedde; and, he does not ask for a new trial, but seeks reversal, resting solely upon the theory that as to him there was no jury question presented.

126

It is plaintiff's theory that the defendant Goedde "maintained an attraction on his premises and permitted defective attractive mechanical equipment to go onto and remain on his premises when he knew, or, by the exercise of reasonable care should have known, that children would be attracted thereby."

We have here for decision the question of whether or not a landowner may be held liable for personal injuries to a child resulting from there being upon his land a dangerous instrumentality which he did not create, control, maintain and when he had no knowledge of its danger.

 As a general rule, an owner of property is not liable for injuries caused by the negligence of an independent contractor or his servants working on the premises. Illinois Law & Practice, Negligence, Sec. 82. The reason for this rule is that in such cases the relationship of master and servant does not exist between the owner and the contractor. Scammon v. City of Chicago, 25 Ill. 424; Hale v. Johnson, 80 Ill. 185. But exceptions exist to this rule. Thus, if an owner's own negligence and the negligence of an independent contractor directly concur in producing the resultant injuries, both are jointly liable. Consolidated Ice Mach. Co., v. Keifer, 134 Ill. 481, 25 N. E. 799; Beninghoff v. Futterer, 176 Ill. App. 579; or, if the work done by the contractor is inherently dangerous, the owner may be held liable if he fails to warn an invitee of the dangerous condition upon the property. Frost v. Andes Candies, Inc., 329 Ill. App. 535, 69 N.E.2d 732. Analogous to this last exception is the case where an owner leases property with actual or constructive notice of a defective or dangerous condition. In such case, the owner, notwithstanding the lease, is liable to strangers for injuries caused by the defect to the same extent as if he were in control and possession of the

property. Wagner v. Kepler, 411 Ill. 368, 104 N.E.2d 231.

■ And too, we have an exception for small children. Though it has been said that infants, as a general rule, have no greater rights to go upon the land of others than adults (Burns v. City of Chicago, 338 Ill. 89, 169 N. E. 811), "recognized exceptions exist where the landowner maintains an attractive nuisance upon the premises, or, even in the absence of a dangerous attraction, where the owner knows that small children customarily play on the property." Wagner v. Kepler, 411 Ill. 368, 372, 104 N.E.2d 231, 233. In a situation where "young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children . . . there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." Kahn v. James Burton Company, 5 Ill.2d 614, 625, 126 N.E.2d 836, 842.

Until the last pronouncement of the Supreme Court upon this subject, in the Kahn case, many cases had held that the attraction must be the inherently dangerous condition which itself caused the injury complained of. Many other cases had held otherwise. To end this and other undesirable and irreconcilable conclusions which resulted from the previous cases, the Court, in the Kahn case, said on page 624 of 5 Ill.2d, page 841 of 126 N.E.2d, "the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases," and on page 625 of 5 Ill.2d, page 842 of

126 N.E.2d, "The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child."

■■ The doctrine of foreseeability has been the basis of tort liability for many years. Berg v. New York Cent. R. Co., 391 Ill. 52, 62 N.E.2d 676; Wintersteen v. National Cooperage & Woodenware Co., 361 Ill. 95, 197 N. E. 578. A "customary rule" of an ordinary negligence case is that the true basis of foreseeability is that men should be charged only with that knowledge or notice of what a reasonable or ordinarily prudent person would have foreseen. Berg v. New York Cent. R. Co., supra. The law recognizes that the conduct of a reasonable man varies with the situation with which he is confronted (Janjanin v. Indiana Harbor Belt R. Co., 343 Ill. App. 491, 99 N.E.2d 578, 582) thus, when a person has no reason to suspect danger he is not required to look for it. Nor may a person be charged with a failure to observe or anticipate danger when, in similar circumstances, an ordinarily prudent man would not have done so.

> "Assuming a duty due from one person to another and neglect thereof, liability for the neglect is limited in law to results which reasonably could have been anticipated. Without such a rule people could not safely live in our complex society." Dabrowski v. Illinois Cent. R. Co., 303 Ill. App. 31, 42, 24 N.E.2d 382, 387. In the Dabrowski case, supra, we find this language which is taken from Pollock on Torts, 8th ed. 41, "The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things."

"A man cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge or reasonably was chargeable with knowledge that the act or omission involved danger to another." 38 Am. Jur., Negligence, sec. 23, p. 665. "Accordingly, in order to impute knowledge of a dangerous thing or place, the danger therefrom must have been such as is recognized by common experience or by the special experience of the actor. . . ." 38 Am. Jur., Negligence, sec. 24, p. 669.

Neither in Kahn v. James Burton Company, supra, nor in other cases similar to the instant case have owners been held liable. In the Kahn case, the owners were sued along with other defendants and at the close of proceedings the court directed a verdict for the owners and no error was assigned for such action. In Kleren v. Bowman, 15 Ill.App.2d 148, 145 N.E.2d 810, the owner of premises was sued, along with his lessee, a general contractor, and two sub-contractors. At the close of the plaintiff's case, the trial court allowed the motion for a directed verdict for the owner of the premises and the trial proceeded against the other defendants, the lessee also being let out by the court at the close of all evidence. In Wilinski v. Belmont Builders, Inc., 14 Ill.App.2d 100, 143 N.E.2d 69, suit against a builder was sustained on the ground of attractive nuisance, the owner not being joined in the suit. In Melford v. Gaus & Brown Construction Co., Inc., 17 Ill.App.2d 497, 151 N.E.2d 128, the injured boy likewise filed against the construction company and the owner of the premises was not brought into the suit.

Defendant owner here suggests that the rule growing out of the Kahn case doesn't extend to an owner of premises who has no connection with the dangerous agency causing the injury. We do not decide

that question here because we exonerate the owner in this case due to his complete lack of any knowledge, actual or constructive, of the dangerous instrumentality (tractor which was equipped to start without a key). Liability under the rules of ordinary negligence requires some knowledge on the party at fault, be it actual or constructive. It isn't ownership of premises which frees this defendant; rather, his total lack of the knowledge of the danger to the children. We have noted that owners have been liable (Wagner v. Kepler, supra, Frost v. Andes Candies, Inc., supra.) Even the Kahn case recognized this. We, therefore, have arrived at our holding without determining whether the Kahn case, in principle, may or may not be applicable to cases against owners of premises.

We have here a situation common to almost every community today. Throughout the breadth of our land married couples are purchasing a site for a new home and are building them by the hundreds of thousands each year. We suppose that in the vast majority of instances the entire building process is left up to professional contractors and that the owner, himself, confines his activities to "checking up" on occasion and seeing how the job is progressing. This was the case here. Goedde owned an interest in a lumber company in another town, and he and his family lived some distance from the lot upon which they decided to build their new home. All the work was contracted out, and Goedde confined his "ownership," "supervision" and "control" to checking up occasionally on the progress being made. In the same manner, as with the other contractors, he hired Bartosik to remove the excess dirt, and, in the same manner, as with other contractors, he knew that Bartosik would remove the dirt by tractor and truck just as he knew that cement and other materials would be delivered by truck and that the various artisans would use different mechan-

131

ical devices and equipment in their work. But, he had no notice that Bartosik would use the type of tractor he did, that he would appear on any certain day or that he would leave it unattended or in a condition to harm small children. Nor does the record suggest anywhere, anything which would warn or lead Goedde to inspect the tractor. Merely because Goedde owned the lot, and for no other reason, plaintiff argues that liability attaches. The gist of plaintiff's argument is that Goedde should have foreseen all injury which might occur to children during the work being done by the various contractors and should have taken steps to prevent such injury. He is thus to be made responsible for the contractor's trucks, the plumber's blowtorch, the mason's wheelbarrow, the carpenter's saw and the landscaper's lawnmower. This would result in an intolerable burden upon the lot owner who contracts with others to build for him.

There was no more reason to cast suspicion upon Bartosik's tractor than to condemn the other workmen's equipment. Trucks and tractors are most common today, and we do not consider them dangerous per se. See Schlatter v. City of Peoria, 309 Ill. App. 636, 33 N.E.2d 730. It is always unfortunate when a child gets injured while playing, but a property owner, unless he is at fault under a recognized theory of liability, cannot be required to indemnity against every possibility of injury. Patterson v. Byrne, 24 Ill.App.2d 565, 165 N.E.2d 374.

According to the above authorities liability may not be imposed unless it appears that an owner knows or in the exercise of reasonable care should have known, of the dangerous condition causing the injury. To submit the question of Goedde's liability, based upon the record in this case, to the jury was error.

132

The judgment against Goedde, the owner of the premises, should have been set aside by the trial court. Accordingly, that judgment is reversed.

Reversed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.