Cicero State Bank, Administrator of Estate of Lottie Jerzak, Deceased, Appellee, v. Dolese and Shepard Company, Appellant.

Gen. No. 40,205.

Opinion filed January 16, 1939. Rehearing denied January 30, 1939.

HOWARD & GREENE, of Chicago, for appellant; H. L. HOWARD, of counsel.

JULIUS H. SELINGER and JULIUS T. SKRYDLEWSKI, both of Chicago, for appellee; JULIUS H. SELINGER, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

On July 17, 1933, Lottie Jerzak, a month over 14 years of age, was drowned while on the premises of the defendant; the administrator of her estate brought suit alleging that defendant owned and possessed certain premises used as a dumping ground for waste material; that water to the depth of 40 feet had accumulated on the premises on which were floating planks, scum and other objects; that the premises were attractive to children of tender years and that plaintiff's intestate was attracted to the negligently unguarded water hole and while at play she fell into the water and was drowned. Upon trial the jury found defendant guilty and assessed plaintiff's damages at $4,000. Judgment for this amount was entered and defendant appeals.

The premises on which this accident happened covered a large area at the western boundary of the city of Chicago; the place was originally a quarry operated by the defendant, but for some years prior to the acci-

dent had been used as a dumping ground for garbage and refuse.

The premises extended south from 30th street to 33rd street, about three city blocks, and west from 46th avenue to 48th avenue, about two city blocks; garbage had been dumped on the premises for some years before and it had been filled up except about a square block in the middle of the premises; this hole was filled with water on which was floating all kinds of rubbish which at some places became thick enough to form a scum or muddy soft ground; there was no regular roadway across the premises; the eastern boundary was the railroad tracks of the Belt Line railroad and the M. & I. railroad; east of these tracks was 31st street running east and west, and the pavement and sidewalk on 31st street stopped some distance east of the Belt Line tracks, but the evidence shows that people wishing to cross defendant's premises would cross the railroad tracks and walk on what might be called an extension of 31st street across the property going west.

The trucks of the concerns dumping garbage at this place in 1933 would enter a gate on the west side and drive into the premises in an easterly direction; the garbage would be dumped at the edge of the water hole and part of it would roll down the embankment into this hole and part of it would remain on top, from where it would be shoved by a tractor over the embankment down into the water hole; the embankment was from 8 to 12 feet higher than the water hole and extended east and west for a distance of a city block, not in a straight line but jagged. There was evidence that below this embankment, at the north edge of the water hole was a strip of water, but there is a conflict in the evidence as to whether it was all open water or partly covered with scum and rubbish; the water varied in depths at different places but is described as "deep."

Lottie Jerzak, the deceased, was living at home with her mother, a widow, on west 39th street; she was having her vacation from grammar school where she had just graduated. Lottie, with her sister Sophie, then 12 years of age, and a neighbor, Florence Noga, 11 years of age, decided to go to this garbage dump to look for toys. This was a customary thing for the children in the neighborhood to do. The path or driveway was used generally by people in the community desiring to cross the premises; from this pathway running across the premises the dumping into the water hole was visible and accessible; in the material brought by the trucks and dumped were toys, dolls and bright, shiny metals, and the evidence shows that children customarily went to the place of the dumpings to salvage such articles.

The deceased, with the two other girls, had crossed over the railroad tracks onto defendant's premises at about 31st street and walked first in a westerly direction and then southwesterly towards the water hole; they picked up some toys and then proceeded down the embankment to the level of the water hole. Except for the strip of water the surface of the water at this point was covered with a scum, which witnesses said looked like the pathway on which people walked. One witness said "It appeared to be ground." Another witness testified that the scum at this point was about a foot and a half thick. The girls walked in single file over this place, unaware of the danger. The deceased led the way when "the ground beneath her gave way and she fell into the water." Sophie, who was following, tried to reach her sister, but she also sank into the scum and water, as did the third member of the party, Florence Noga. Men nearby, hearing their screams, went to the scene and succeeded in rescuing Florence Noga and Sophie Jerzak, but Lottie sank into the water and her body was not recovered until two days afterwards.

Defendant first says that the attractive nuisance doctrine does not apply to a child 14 years of age. The attractive nuisance doctrine rests upon the proposition that it applies to children of such tender years that they cannot be guilty of contributory negligence as a matter of law. Defendant cites *Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142, as holding that as a matter of law the attractive nuisance doctrine cannot be applied to the case of a child above the age of 14 years. That case was not an attractive nuisance case. The negligence charged was the failure of the defendant to comply with a fencing ordinance and the opinion holds that the question as to plaintiff's carefulness was properly submitted to the jury.

Generally speaking it may be said that one who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or permits dangerous conditions to remain thereon with the knowledge that children, regardless of age, are in the habit of resorting thereto for amusement, is liable to such children as are injured thereby, and whether or not such conditions are attractive to children is a question of fact for the jury. *Deming v. City of Chicago*, 321 Ill. 341; *Stedwell v. City of Chicago*, 297 Ill. 486, 490; *Stollery v. Cicero & P. St. Ry. Co.*, 243 Ill. 290, 292.

There is abundance of evidence that children habitually went to defendant's dumping ground to get toys, and even candy. Children in large numbers and of all ages were daily playing about this dumping ground. There was also evidence that there were signs placed at various points on the premises warning of danger, and employees testified that they were constantly warning children and others to avoid danger, but these signs and warnings were for the most part ignored by adults and children alike.

Defendant cites some cases in which it has been held that to create liability for an attractive nuisance the dangerous thing must be so located as to attract children from the street or from some place where they may be expected to be. The evidence shows in the instant case that the attractions of the dump were easily visible from this short cut or pathway across the premises.

But it is not always necessary, to create an attractive nuisance, that it should be visible from the street. In *Ramsay v. Tuthill Bldg. Material Co.*, 295 Ill. 395, 399, children had been in the habit of coming upon the defendant's premises and playing about an elevated track, with sand bins underneath filled with sand; a boy climbed up the structure, jumped into one of these bins and was smothered by the sand which ran out of the bin through a hole in the bottom. The court sustained a judgment under the attractive nuisance theory, holding that it was not necessary, to make the defendant liable, that the bins with holes in the bottom should be visible from the street; that if a person permits children who are incapable of appreciating danger to come upon his premises, where they are exposed to danger, there is an obligation upon him to take means to prevent this either by excluding them from the premises or protecting them while they are on the premises.

In the present case it appears that literally hundreds of persons were on the premises at all hours of the day and night. The tractor operator, who was under orders to keep people off the grounds, testified that this did not include chasing away people who used the pathway or short cut along what would be the extension of 31st street through the property. Moreover, it appears that between 75 and 100 persons lived upon the dump as squatters, in shacks built from waste material which they found upon the premises. All of this was, apparently, with the permission of defendant.

Defendant claims that the evidence shows that the accident happened at a place where there was open water, and cites cases involving children playing near open water where the danger was apparent. While there was a strip of water immediately below the embankment, the jury could properly believe that just beyond this strip was the so-called pathway, apparently solid ground, upon which the children were walking at the time of the accident.

The dangers present in the water hole were not obvious even to an adult, and certainly not to a child 14 years of age of the experience, capacity and intelligence of the deceased. The appearance of the place where she was walking was described by various witnesses as like "ground." It "looked like a plain pathway in a prairie." "There was grass, sand and rubbish on it." Under such circumstances it could not be held as a matter of law that the deceased, 14 years and 1 month old, should have realized the danger. The condition might easily have misled an adult. There is no evidence that the deceased knew that the place where she was walking was unsafe or knew of any other person who had previously been injured there. Witnesses for defendant, testifying to the treacherous condition of the pathway, said that this would only be known by experience.

Defendant argues that the deceased was not attracted to the premises by the ground or pathway, whose unstable condition caused her to break through and to become submerged in the water, but that she was allured to the premises by the prospect of salvaging toys and things of that nature. In *O'Donnell v. City of Chicago*, 289 Ill. App. 41, where a boy was burned while climbing an electric light pole to watch a prize fight within a nearby stadium, it was argued, as here, that the pole which inflicted the injury was not the thing that attracted the boy, but the prize fight. We held

that the question was whether the owner maintained an instrumentality which could reasonably be expected to attract children, and that the defendant in maintaining its imperfectly insulated wires within the attractive environment identified itself in that way with the attractive place. And in *Oglesby v. Metropolitan West Side El. Ry. Co.*, 219 Ill. App. 321, 325, where it was argued that the plaintiff was not attracted to the premises by the elevator which caused the injury but by freight cars on the premises, we held that because a child is first attracted upon the premises by another instrumentality than the one inflicting the injury is not decisive.

. As we have already indicated, it cannot be said that the deceased was guilty of contributory negligence as a matter of law, and this question was properly submitted to the jury.

Defendant's counsel have presented a number of cases involving facts so different from those in the case at bar as to make it useless to indulge in any extended comment upon them.

Objections are made to various instructions given at the request of plaintiff. They for the most part contain general statements as to the duties of an owner of premises containing things appealing to childish curiosity and instincts which might be dangerous. The court also instructed the jury that the deceased herself must have been exercising ordinary care for her own safety before her administrator could recover, and explained "that the plaintiff must have been exercising such degree of care that an ordinarily prudent girl of plaintiff's age, experience, intelligence and capacity would have exercised under the same or similar circumstances." Defendant says that the factors of "experience, intelligence and capacity" should not be considered in connection with a person over the age of 14. In *Hughes v. Medendorp*, 294 Ill. App. 424, it was held

that the absence of these factors in an instruction was erroneous. In *Peterson v. Chicago Consol. Traction Co.*, 231 Ill. 324, the plaintiff was between 14 and 15 years of age; he was injured by defendant, and the court gave the jury an instruction substantially the same as the one under consideration. The Supreme Court affirmed the judgment of the lower court. The court committed no reversible error in regard to the instruction.

It cannot be said that the verdict of the jury is against the manifest weight of the evidence and as no reversible errors occurred upon the trial the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.