Ralph J. Kleren, Jr., a minor, Plaintiff-Appellee, v. Zander Bowman et al., Defendants; Schrager Construction Company, Certain Defendant-Appellant.

Gen. No. 11,029.

Second District, First Division.

October 9, 1957.

Rehearing denied December 4, 1957.

Released for publication December 5, 1957.

Leren & Burek, of Wheaton (Palmer Leren, of counsel) for Schrager Construction Company, certain defendant and appellant.

Reid, Ochsenschlager and Murphy, of Aurora (William C. Murphy and Lambert M. Ochsenschlager, of counsel) for plaintiff-appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

On May 31, 1954, plaintiff, then fourteen years of age sustained serious injuries when he and his bicycle, which he was riding fell twenty or more feet from the surface of a parking lot, then under construction, to the premises below. Thereafter, by his father and next friend, he filed this action against the owner of the premises, Zander Bowman, the lessee thereof, Jewel Tea Company, the general contractor, Schrager Construction Company, and its sub-contractors, the Big 3

Paving Company, and the Swanson Asphalt Company, to recover for the injuries he sustained.

The amended complaint alleged that the Schrager Construction Company and its two named sub-contractors were in possession of this parking lot and were engaged in blacktopping it and had not quite completed the job on May 31, 1954; that prior to the day plaintiff was injured, the defendants had several machines and employees engaged on the project, which attracted numerous children living in the vicinity; that the blacktopping on the parking lot was smooth and level, which caused it to be alluring, attractive, and tempting to children of tender years and which amounted to an inducement or invitation to children to play and ride bicycles thereon; that defendants knew that the land immediately north of the parking lot was used as a baseball diamond and playground by the neighborhood children and that the north edge of the parking lot, by reason of its height, afforded an ideal vantage point for children to view the baseball games and playground activities on the land below and immediately north of the parking lot.

The amended complaint then alleged that to the west of the baseball field and playground and below the surface of the parking lot were numerous residences and private garage structures roofed with dark colored materials and surrounded by trees and shrubbery, all of which made it difficult for a child to see the exact location of the north edge of the blacktopped parking lot and rendering the location of said north edge deceptive and deceiving; that the north edge of said parking lot was not fenced, marked, or otherwise delineated; that because of the deceptive appearance of this northerly edge of the parking lot and in consequence of their childish lack of judgment and experience and because of their childish impulses, children playing thereon had their attention diverted to the activities on the

150

playground and were thus exposed to the danger of going too near to the edge of the blacktopping and then being unable to stop on the loose crushed rock fill below; that said parking lot was situated at a place where it could be readily seen from a public street and in a populous section of the city of Aurora, and that a large number of children were in the habit of passing the parking lot and on and prior to May 31, 1954, large numbers of children were accustomed to riding bicycles on the parking lot, and particularly the north end thereof, so as to watch the activities on the playground below.

The amended complaint, after charging the defendants with negligence (a) in failing to provide any fence or barricade at the north end of the parking lot; (b) in failing to mark the north end of the blacktopping so as to distinguish it from the surrounding roof tops; (c) in permitting the asphalt to crack and remain in a cracked condition; (d) in failing to have a watchman on the lot; and (e), in failing to erect any warning of the danger near the north edge of the lot, then alleged that plaintiff on May 31, 1954, entered the parking lot on his bicycle and rode his bicycle too near the unsafe and deceptive northerly edge of the blacktopping on the parking lot; that he was unable to stop it from going over the edge and as a result he and his bicycle fell to the natural surface of the ground below, whereby he sustained serious injuries. The amended complaint averred that plaintiff was in the exercise of such care and caution for his own safety as could be reasonably expected of a boy of his age, intelligence, experience and mental capacity.

By their answers, the several defendants denied the material allegations of the amended complaint and the issues thus made were submitted to a jury. At the conclusion of the plaintiff's case, the trial court allowed the motion of the owner of the lot for a directed ver-

dict finding him not guilty. At the close of all of the testimony the motion of the lessee of the lot for a directed verdict was granted. The jury returned a verdict finding the sub-contractors not guilty and found the remaining defendant, Schrager Construction Company, guilty and assessed the damages of the plaintiff at $18,000. After the usual post trial motions were overruled, judgment was entered on the verdict and the construction company appeals.

Appellant contends that neither the amended complaint stated, nor the evidence sustains, an action under the attractive nuisance doctrine; that there is no evidence disclosing any negligence on the part of the defendant; that plaintiff was guilty of contributory negligence as a matter of law, and that the accident was solely the result of the carelessness of the plaintiff in riding his bicycle down the incline and over the retaining wall. Counsel insists that the trial court erred: (a) in not directing a verdict for appellant; (b) in receiving into evidence certain contracts identified as plaintiff's exhibits, 11, 12, and 13 and (c) that the verdict and judgment are excessive.

The evidence discloses that the parking lot where the accident in question occurred was located on the north side of New York Street, between Ohio and Smith Streets, in the city of Aurora. The open, unenclosed lot has a frontage on New York Street of approximately 120 feet. When the present owner of the lot first acquired it, it was unimproved and sloped to the north from New York Street to Fulton Street, which was some 400 to 500 feet north of New York Street. The owner had caused this lot to be filled up to grade with New York Street, and a concrete retaining wall, twelve to fifteen feet in height, had been constructed to retain this filling. The rear end of the parking lot, however, was approximately eight or ten feet above the top of the concrete retaining wall so that the surface

152

of the lots just north of the parking lot was twenty to twenty-five feet below the surface of the north edge of the parking lot.

A building had been constructed, which was to be occupied by the lessee, defendant Jewel Tea Company, on the east side of and adjoining the parking lot. This building had been completed, but the parking lot had not been finished. The parking lot where the blacktopping ended at the north end descended abruptly for three to four inches and then sloped rather sharply with a crushed rock surface for approximately eight or ten feet to the top of said concrete retaining wall. Adjacent to the base of this retaining wall to the north thereof was a baseball diamond and playground, which were in frequent use, and to the north and west of the playground and ball diamond were numerous residences and garage structures. Many of these had roofs with dark colored material, and the evidence tended to prove that the north edge of the parking lot was somewhat difficult to perceive.

The evidence further disclosed that children from the neighborhood, particularly with bicycles, habitually frequented the parking lot prior to the date of plaintiff's injury. Its smooth, level surface was used for bicycle riding, and it also served as a vantage point to observe the playground activities and the baseball games played on the lot below and immediately to the north. There were no warning signs of any kind or character and no signs or marking indicating the north edge of the blacktop. Appellee lived about a half block from this lot and had ridden his bicycle on it two or three times before the day of the accident. On the morning of the accident, appellee had gone to the home of a boy friend and about eleven o'clock that morning, he and his friend took their bicycles and started to ride around the neighborhood and entered the parking lot, where they rode for several minutes. They stopped

to watch a baseball game being played on the ground adjacent to the parking lot on the north. The plaintiff then rode away to the east for a short distance and then came back to the parking lot and proceeded along the north edge of the blacktop in a northwesterly direction while watching the baseball game. He testified that he was watching the ball game and occasionally glanced in the direction in which he was riding his bicycle. He got too close to the edge of the blacktop and the wheels of his bicycle slid off onto the crushed rock. He applied the brake on his bicycle, but it would not hold in the crushed rock and it kept on going down the incline in a northwesterly direction and over the concrete retaining wall. He and his bicycle landed on the ground below and he sustained the injuries complained of.

In Kahn v. James Burton Co., 5 Ill.2d 614, a boy, eleven years of age, was injured when a pile of lumber, upon which he had been playing, toppled over and certain boards of the pile fell upon him. A jury trial resulted in a verdict for the plaintiff and against the lumber company and the James Burton Construction Company, who was the contractor engaged in building a home for the owners of the premises. The appellate court held that as a matter of law the defendants were not liable and reversed the judgment rendered by the superior court upon the verdict of the jury. In reversing the judgment of the appellate court the Supreme Court said (p. 625): "It is generally true, as defendant, contends, that an owner or one in possession and control of premises is under no duty to keep them in any particular state or condition to promote the safety of trespassers or others who come upon them without any invitation, either express or implied. (Briney v. Ill. Central Railroad Co., 401 Ill. 181; Darsch v. Brown, 332 Ill. 592). It is also established that infants, as a general rule, have no greater rights to go upon the

land of others than adults, and that their minority of itself imposes no duty upon the occupier of land to expect them or prepare for their safety. (Burns v. City of Chicago, 338 Ill. 89; McDermott v. Burke, 256 Ill. 401). It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. (Wagner v. Kepler, 411 Ill. 368). The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child. Whether the lumber pile was sufficiently attractive to entice children into climbing upon it, whether its condition would involve danger from such activity, and whether the contractor should have anticipated the probability of the accident, were matters for determination by the jury. City of Pekin v. McMahon, 154 Ill. 141."

The court in the Kahn case, supra, then cited and quoted with approval from Wolfe v. Rehbein, 123 Conn. 110, 193 Atl. 608, wherein it appeared that the defendant owned a lot adjoining the house where plaintiff lived and had piled lumber upon the rear of his lot. A portion of the lumber was removed during the erection of a house on defendant's lot, and a twelve-inch opening was left in the pile, and the remaining timbers were insecure and unbalanced. Plaintiff's small child

155

was fatally injured while playing on the lumber pile, and the action was to recover for her wrongful death. The evidence tended to show that defendant knew that the decedent and her sister were accustomed to play on the lot during the construction of the house. In affirming a judgment for the plaintiff, the court held that where one in possession of real property knows or should have known that children are likely to trespass, he is bound to anticipate their presence and refrain from maintaining a condition likely to be dangerous to them because of their propensities to intermeddle and their failure to realize the risk involved and said: "The jury could reasonably have found that defendant knew that this child was every day upon his lot in the immediate vicinity of this pile of lumber and that he should have realized that, in the condition in which it was left, it involved an unreasonable risk of serious bodily harm which children of such tender age could not be expected to discover or appreciate and that her death was caused by his failure to perform the duty which, under these circumstances, devolved upon him of taking reasonable precautions to avoid injury to her, even though her status was that of a trespasser."

In the Kahn case, supra, the court said that the test was whether the defendant in the exercise of ordinary care could reasonably have anticipated the likelihood that children would climb onto the lumber and would be injured if it were not securely tied. So the test in the instant case is whether appellant in the exercise of ordinary care could reasonably have anticipated the likelihood that children would ride their bicycles on this blacktop lot and be injured if the north side of this blacktop lot was not protected in some way.

In the instant case the parking lot is located in a populous neighborhood. It was unguarded and unfenced, and its northerly edge abruptly dropped for a

156

few inches to a sloping embankment which continued for a considerable distance to the high concrete retaining wall. The sloping embankment was surfaced with crushed rock. At the base of the retaining wall was a frequently used playground. These facts, together with evidence that plaintiff and other children were in the habit of using this parking lot for riding their bicycles thereon and as a place to view the activities on the playground and ball diamond below, required the issues made by the pleadings to be submitted to a jury. Whether from these facts and other facts and circumstances in evidence appellant should have known that this parking lot would be likely to attract children who might be injured if they fell over the edge thereof was for the jury to determine as was the question whether the plaintiff, a fourteen-year-old boy, was guilty of contributory negligence as he rode his bicycle upon the occasion in question. (Kahn v. James Burton Co., 5 Ill.2d 614, 623.)

In Cicero State Bank, Adm. v. Dolese & Shepard Co., 298 Ill. App. 290, recovery was allowed under the attractive nuisance doctrine where it appeared that a fourteen-year-old girl was drowned while on the premises of the defendant. It was argued in that case that the attractive nuisance doctrine did not, as a matter of law, apply to a child of the age of fourteen or above. The court rejected this argument and said (page 294): "Generally speaking it may be said that one who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or permits dangerous condition to remain thereon with the knowledge that children, regardless of age, are in the habit of resorting thereto for amusement, is liable to such children as are injured thereby, and whether or not such conditions are attractive to children is a question of fact for the jury. Deming v. City of Chicago, 321 Ill. 341; Stedwell v. City of Chicago,

157

297 Ill. 486, 490; Stollery v. Cicero & P. St. Ry. Co., 243 Ill. 290, 292."

Cochran v. Kankakee Stone and Lime Company, 179 Ill. App. 437, was an action brought by the administrator of Harry Walter, deceased, to recover damages for his wrongful death. It appeared that the decedent was almost eleven years of age when he was drowned in a pond within the city limits of Kankakee on premises owned by the defendant and operated by them to quarry limestone. The premises had been excavated many years before and had filled with water. The banks were precipitous and the water was so deep that a child falling therein could not get out. The pond was in a resident neighborhood and near several schools and while there was a fence along the pond there was also a gate in the street and an opening in the fence sufficient to permit persons to pass through to the pond. Upon the afternoon in question the decedent went to the pond with some playmates to fish and he fell in the water and was drowned.

The plaintiff recovered in the trial court and in affirming that judgment this court said (pp. 438–9): "Where the owner or occupant of land has unguarded dangers thereon, of such a nature as to be attractive to a child and to appeal to his childish curiosity and instincts, such dangerous attractions are regarded as holding out implied invitations to children of tender years to come upon the premises for their own pleasure and the owner or occupant of the premises must use ordinary care to keep them in safe condition because such children, being without judgment, are liable to be drawn by childish curiosity into places of danger and to be there injured by reason of such unguarded attraction. In any given case where an injury results to a child from unguarded conditions upon the premises of another, the question whether the premises are dangerous, whether they are calculated to be attrac-

158

tive to a child of tender years and liable to lead such a child into danger, and whether the child had such a lack of intelligent capacity and experience as to bring him within the protection of said rule, are questions of fact for the jury."

█ Whether the parking lot in the instant case was sufficiently attractive to entice children to ride their bicycles thereon, whether its condition on the day in question would involve danger from such activity, whether children were in the habit of resorting thereto for amusement or pastime, whether appellant knew or should have known its condition, and whether appellant should have anticipated the probability of an accident such as did occur, were all questions of fact; and, if the jury found that appellant permitted a dangerous condition to remain with the knowledge that children were in the habit of resorting thereto for amusement, the foregoing authorities hold that he is liable to such child or children who are injured thereby. Under the evidence found in this record and the foregoing authorities, the trial court did not err in not directing a verdict for appellant.

█ It is next insisted that the trial court erred in admitting in evidence, over appellant's objections, the original construction contract between appellant and Zander Bowman, the owner of the premises, also the sub-contract between appellant and the Swanson Asphalt Company and a letter from Swanson Asphalt Company to the Big 3 Paving Company confirming the sub-letting of the work on the parking lot to the Big 3 Company. When these exhibits were offered, a general objection was made by counsel for appellant. It is now insisted that these contracts had no bearing on the issues inasmuch as the pleadings admitted that appellant was the general contractor; that appellant sub-let the blacktopping of the parking lot to the Swanson Asphalt Company, and that the Swanson Company,

159

in turn, sub-let that work to the Big 3 Paving Company. Counsel further insist that these exhibits contain much matter that is immaterial and irrelevant to the issues and that they tended to confuse the jury and prejudice the jury against appellant as the contract disclosed that the construction cost was in excess of $161,000.

The original construction contract obligated appellant to provide all materials and work for the complete erection and construction of the building to be occupied by the Jewel Tea Company on the described premises according to the plans and specifications prepared by the architect. Appellant was obligated by the contract to pave the parking lot and to provide "necessary fencing, red lanterns etc., for public safety" and to give a separate price for a fence to be constructed of cedar posts and horizontal wood lumber to be bolted thereto as detailed on the plans. This fence was to be erected at the north side of the parking lot.

In Cochran v. Kankakee Stone and Lime Company, supra, the evidence disclosed that the owner had leased the premises to the Kankakee Quarries Company and in the lease it was provided that the owner, within 19 days from the date of the execution of the lease, would construct and thereafter maintain a woven-wire fence around and along the premises where they were adjacent to the public street, which fence should be four feet high and of such strength and so constructed as to be suitable and sufficient to keep persons and animals off of the property and to protect them from the danger of entering or falling upon or into said property or any part thereof. In commenting upon this evidence the court said (p. 441): "This provision in the lease was a recognition by both parties of the danger of the pond and the fence that was there when this child was drowned was not in compliance with the lease. The law is that where premises are rented in a bad state of repair the landlord is liable for injuries

160

caused thereby to third parties, as we held in Everett v. Foley, 132 Ill. App. 438, where the authorities are collected. The joint liability of both defendants was therefore established by the evidence under the rules of law above stated."

In the instant case the instruments objected to disclosed that appellant had assumed a contractual duty to provide a fence at the north end of their parking lot and take other means to provide for the safety of the public. This was a recognition by the parties that such a barrier was required. While the pleadings disclosed that these several exhibits existed there was nothing in the pleadings which revealed what the contents of these instruments provided. Perhaps it would have been better had only certain portions of the documents been admitted into evidence, but no objection was interposed in this respect.

██ It is finally contended that the jury verdict of $18,000 is excessive. The plaintiff suffered a ruptured spleen in the accident, and a spleenectomy was performed on him. He sustained actual damages of $1,405.10. The future consequences of the removal of his spleen are in considerable doubt. It does appear, however, from the medical testimony that he has suffered a serious injury in the loss of this vital internal organ. After a review of the medical testimony and a consideration of the authorities cited, we are unable to say that the amount of the verdict discloses any passion or prejudice on the part of the jury, which is required in order that such a verdict may be set aside. (Fitzpatrick v. California & Hawaiian Sugar Refining Corp., 309 Ill. App. 215, 223; Gleason v. Cunningham, 316 Ill. App. 286, 294.)

The judgment is in accordance with the law and the evidence and is, therefore, affirmed.

Judgment affirmed.

McNEAL and SPIVEY, JJ., concur.