(No. 6753— )

TERRY PARR, by WILLIAM PARR, SR., His Father and Next Friend, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 20, 1974.*

WINSTEIN, KAVENSKY & WALLACE, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This is a cause of action brought pursuant to Section 8, Paragraph (d) of the Court of Claims Act for personal injuries sustained by claimant when he was injured as a result of diving into the Hennepin Canal, Rock Island County, Illinois, on June 4, 1971.

The State of Illinois, sometime prior to the accident in question, had taken over the Hennepin Canal. This canal is approximately 96.8 miles long and runs between the Illinois River and the Mississippi River. The canal at one time was used for barge transportation, but at the present time is used primarily for recreational purposes. This area was taken over by the State by deed from the Federal Government on, or about, August 12, 1970.

The evidence shows there was one ranger assigned to the canal.

The Izaak Walton League had had a lease on a portion of the canal for some time which included the area where the unfortunate accident happened.

The injured party, Terry Parr, was 16 years old and a sophomore in high school.

On the day in question, he went with his mother and various other members of his family to swim in the Hennepin Canal where it borders a public recreational area maintained by the Izaak Walton League. A small deposit was made by claimant's mother in the Izaak Walton League collection box where such donations are accepted.

Claimant knew how to swim and had been swimming in the canal perhaps fifteen times in the past years.

The first time claimant had been to swim in the canal in 1971, was on the date of the accident, which was also the last day of school.

There were two docks there which had been put in by boaters.

There were other people swimming in the canal at the time of the accident. Some of these people were claimant's schoolmates who were engaged in horseplay and began throwing mud at one another.

One of these individuals was Jimmy Stotlet, who was in the canal at the place where claimant dove in. When claimant saw him, Jimmy Stotler was in the water up to his neck; but he was apparently on his knees, as the water was quite shallow where the incident occurred.

Claimant thought the canal was approximately six feet deep where he dove, although the evidence is that he had previously dived there several times prior to the accident and had personal knowledge as to the depth of the canal and the grade of the bottom of the canal. The bottom of the canal at the place of the accident was hard

sand and as a result of the diving, he evidently struck his head on the bottom, fracturing a certain vertebra.

He lay motionless in the water until rescued by other members of the group who were present.

Claimant was paralyzed from the neck down, and was removed to the hospital. He has remained in a very critical condition since that time. Although he is slowly regaining the use of part of his body, it is apparent that he will always suffer a very severe limitation in the use of his body.

The record shows that there has been a very considerable amount expended by his parents in an effort to restore him to a normal condition so that he can have normal use of all his members.

The Izaak Walton League had maintained a recreational camp site and picnic area at the site of the accident since 1955, leasing the property from the Corps of Engineers of the United States Department of the Army. The general public had been using the canal, both before and after the Izaak Walton League lease, and there had always been swimming and swimming activities in the area surrounding the place where the accident occurred.

At the time of the accident, there were no "No Swimming" signs. At one time, there had been a "No Swimming" sign on the dock, but it was not there on the date of the accident. There were no signs warning about the depth of the water, and there were no lifeguards present.

The State Ranger indicated that he had seen swimmers at the Izaak Walton League leasehold but had not ordered them out because of the Izaak Walton lease.

There was some evidence to the effect that "No

Swimming" signs had been posted at various times, but they had been removed by vandals. It is clear there were no such signs on the date of the accident.

It is clear from the record that in the Fall of 1970, shortly after the State took over the jurisdiction from the Federal Government of the Hennepin Canal and bordering land, the Department of Conservation posted 75 park rules and regulations signs along the length of the canal, posting approximately 25 in the Western Section. These were printed on canvas and attached to wooden poles. At the same time, the Department also began posting "No Swimming" signs in the same area. These signs were subject to almost immediate vandalism, and at the date of the hearing, there were no such signs in existence the entire length of the canal.

There are several issues involved here.

I. Was claimant an invitee of the State of Illinois or a licensee?

*Jodlowski v. State of Illinois,* 26 CCR 66, which involved drownings from wading in Wolf Lake State Park, makes it clear that claimant should be treated as an invitee rather than a licensee. Although there were "No Swimming" signs posted in a few places in Wolf Lake State Park, this Court found that the Jodlowski brothers, who met their death while wading in the Lake, were invitees. In other words, entering the water contrary to park regulations did not change the status of the Jodlowski brothers from that of invitee to that of licensee or trespasser. Therefore, Terry Parr did not lose his status as an invitee and become a licensee because he swam in the Hennepin Canal contrary to the regulations of the Department of Conservation.

This is particularly true because prior to claimant's

accident, the State expressly refrained from posting "No Swimming" signs on the Izaak Walton League property, but posted them after the accident.

II. Did the State breach its duty toward the claimant?

The question here as to whether the swimming was the cause of the accident in question is relatively unimportant because swimming, per se, was not the cause of the claimant's injury. There was nothing dangerous about pool number 25 as a site for swimming, if we consider only the act of swimming and exclude the related act of diving. The injury in question came about not from swimming but from diving into shallow water, and arose either because he failed to consider the depth of the water, misjudged the depth of the water, or knowing the depth of the water failed to control his dive. All three possibilities can be found in claimant's testimony. He did not hit his head on any hidden object in the canal, and no positive act of the State misled him as to the depth of the water.

There are three cases that deal with situations such as this:

*Jodlowski v. State,* 26 CCR 66

*Skaggs v. Junis,* 27 Ill. App. 2d 251, 169 N.E.·2d 684

*Hendricks v. Peabody Coal Company,* 115 Ill. App. 2d 35, 253 N.E. 2d 56

In the *Jodlowski* case, several boys waded in shallow water from the shore of Wolf Lake, Cook County, Illinois, to a sand bar. The State had actual notice that on the east side of the sand bar there was a precipitous drop off to a depth of 20 feet. The boys in question did not know this. One Jodlowski brother, undertaking to wade from the

east side of the sand bar, dropped into the deep water. His brother tried to rescue him and both were drowned.

In passing upon this case, the Court held:

"Respondent failed to adopt and provide the requisite safety measures and procedures to warn visitors to the park of the dangerous condition of the lake bottom, and to protect them from it. The drownings of the Jodlowski brothers were the direct and proximate result of this failure."

In *Skaggs v. Junis,* 27 Ill. App. 2d 251, 169 N.E. 2d 684, a 16-year-old boy, diving into a privately owned pond, struck his head on a submerged stump, the existence of which stump was unknown to the boy but known to the person who owned the pond. Following the accident, the pond owner marked the stump with iron pipes and wire. The Appellate Court reversed a directed verdict on a negligence count, and held that the issues of negligence and contributory negligence were for the jury.

In *Hendricks v. Peabody Coal Co.,* 115 Ill. App. 2d 35, 253 N.E. 2d 56, a 16-year-old boy dove into a water-filled strip mine, striking his head on a sandy ledge, the existence of which was known to the land owner but not known to the boy because previous swimmers had muddied the water and made the ledge invisible. The jury found for the plaintiff and the Appellate Court refused to reverse, stating that the issues were factual.

In the present case, we have no sudden drop off, no submerged stump, no sandy ledge, and no hidden dangers.

The test is, should the State have foreseen that an invitee, especially a person of the age of 16, would dive off the bank into the shallow water to his injury, unless warned or otherwise prevented from doing so?

This seems to be more a question of fact, not of law.

III. Was the claimant in the exercise of due care for his own safety?

It is clear from the two Appellate Court cases cited above, that the question of claimant's contributory negligence is a fact question and cannot be resolved as a matter of law. The evidence that would prejudice the claimant's case in this instance, is the fact that he had been swimming in the canal in previous years, was generally aware of the depth of the canal and its sloping bottom, and did not investigate the depth of the canal before diving, but ran "full blast" to the bank and dove in.

This act from a 16-year-old boy who was enjoying himself at a pool was not unusual, but that in itself does not make the State responsible for the unfortunate situation that arose.

Cases of this nature, dealing with the recreational areas of the State, pose a problem as to just how far does the State have to go after providing recreational facilities to protect the general public.

In this case, there are approximately 97 miles of canal which would mean 194 miles of shore line. It would be completely impossible for the State to patrol or provide lifeguards or personnel along thie entire length, and this would be the only way in which the public would be prevented from using it in a manner that might be detrimental to themselves. If such a strict rule applied, the State would be forced to abandon any, and all, recreational facilities of this type.

This Court has held many times that the State is not an insurer of everyone who uses State property.

This Court has also held that the State has a duty to

warn the public of danger in any hidden area; but it cannot be charged with the duty of protecting the public from every possible danger that might arise where they furnish the public with various recreational areas.

In the case of *Pulizzano* v. *State*, 22 Ill. CCR 234, the Court laid down the rule that "an invitation to use the parks is not absolute but an invitation to use particular facilities in the manner in which, and for the purpose for which, they were designed and intended" and further stated that "the State is not obligated to warn of every dangerous place in a park."

Volume 33A of the Illinois Law & Practice, Section 114, dealing with injuries in State Parks, makes the following statement:

"With respect to liability in tort under the Court of Claims Act the State owes a duty to the public to exercise reasonable care in establishing, maintaining and supervising its parks, and it has a duty to warn of a danger that exists along a nature trail which could not be discovered by the public." Citing 24 Ill. Ct.Cl. 1, *Martin* vs. *State.*

This Court passed upon a similar situation in the case of *Thomas Mooneyham, Administrator of the Estate of Ronald Scott Mooneyham, Deceased* vs. *State of Illinois*, No. 6412, where a 12-year-old boy drowned at Starved Rock State Park. In this case, the death occurred when the boy left the regular paths, attempted to climb a rock and fell into the river. The Court held that it was the result of the positive act of the unfortunate victim that caused the tragedy rather than any negligence on the part of the State.

In the present case, it appears that the State furnished a recreational area for the public to use, and that there were docks extending into the water from which individuals could dive, but that they were not used in this particular case.

The evidence is uncontradicted in that the claimant who was familiar with the area dove into the shallow water from the bank, and it was this act, that caused the unfortunate accident.

For claimant to recover, he must prove:

1. That he was in the exercise of due care and caution for his own safety.

2. That the State of Illinois was negligent as charged in the complaint.

3. That the negligence of the State of Illinois was the proximate cause of his injuries.

It is well settled that one who owns or is in control of property is not an insurer of the safety of an invitee, and that this particular rule applies to premises to which the public is invited. *Thoele* vs. *Mazel*, 8 Ill. App. 2d 237; *Dietz* vs. *Belleville Co-op Grain Co.*, 273 Ill. App. 164.

Claimant has failed to sustain the burden of proof, and an award is, therefore, denied.